# Kreider *against* Boyer.

The verbal declarations of a testator that he had made an advancement to his son-in-law, are incompetent evidence to defeat an action for a legacy to his daughter, the wife of such son-in-law, when it appears that the alleged advancement was a debt due by the latter to him, before the making of the will, and which debt remained in full force, as part of the testator's estate, at his death.

If a testator make advancements to one or more of his children, and afterwards make his will, disposing of his whole estate among his children, without noticing the advancements so made by him, each child can claim the amount of the bequest to him, without abatement on account of such advancements.

ERROR to the common pleas of *Union* county.

Joseph Klinger, administrator of Catharine Kreider, against Samuel Boyer, surviving executor of Leonard Boyer, deceased. This was an action on the case for the recovery of a legacy.

On the 8th April 1812, Leonard Boyer made his last will and testament, by which, after making several specific bequests to his widow and others, he thus disposes of his estate:—" Item: All the rest and residue of my estate, after my just debts and funeral expenses be paid, I give and bequeath them in the following manner, to wit: unto my sons, William, John Leonard, Jacob, the children of my deceased son George, for an equal share, and Samuel and my daughter Christina intermarried with John Filman, Catharine intermarried with Isaac Kreider, Elizabeth intermarried with William Haas share and share alike:—the children of my son George to have an equal share."

On the 16th February 1826, the testator died and the will was proved.

The plaintiff, after giving the will in evidence, and exhibiting the account settled by the executors, showing the amount to which intestate was entitled as a residuary legatee, closed.

The defendant then offered the following evidence:—

" That the testator, Leonard Boyer, declared that he had given his money to his children, and only wanted the interest during his

[Kreider v. Boyer.]

life; that Isaac Kreider, the husband of plaintiff's intestate, on the 2d November 1811, gave his note to Leonard Boyer for 46*l.* 8*s.*, equal to 123 dollars 74 cents, which sum, with 96 dollars 25 cents interest, were charged in the inventory of the estate of the said Leonard Boyer, deceased; that the same sum was charged in the executor's administration account, together with 13 dollars 44 cents additional interest, and forms part of the balance reported by the auditors, as proved by plaintiff; that during the lives of Isaac Kreider or Catharine Kreider, no demand of the legacy was even made, but that Isaac Kreider was present at the settlement by the auditors, and that this legacy was considered by Kreider and defendant as settled, by the claim of the testator against him; [*that Kreider was at all times so poor as to be unable to pay said note;*] that Kreider never did pay said note; [*that since the death of Isaac and Catharine Kreider, their children, including the plaintiff, divided all the property of the said Isaac and Catharine among themselves, without administration, the whole of it not exceeding* 100 *dollars;*] that Isaac Kreider bought of defendant at the sale of the goods of the testator to the amount of 17 or 18 dollars, which he did not pay for; that all was considered settled by Kreider and Boyer."

The plaintiff objected to this evidence, but the court overruled the objection and admitted the whole offer, "except the parts within brackets, the note of the 2d November 1811 being first given in evidence, before the declarations of Leonard Boyer, the latter being only admitted to show with what intent the money was advanced to Isaac Kreider."

The plaintiff excepted to the opinion of the court.

The defendant then gave in evidence the inventory of the estate of the testator showing that the note of Isaac Kreider was included in it; the administrator's account showing that the executor was charged with it, and the note itself for 46*l.* 8*s.* dated 2d November 1811, payable ten days after date, and then called witnesses who testified as follows:—

Barbara Boyer testified.—"Leonard Boyer lived with me and my husband, I think eight years. He gave his money to his children just as they needed it. When a child came, he gave it to him after he had married or commenced house-keeping. He gave it because they needed it. Kreider at one time bought a horse and got money. The children that got too much were to pay back again. The interest they were to pay for him to live on. Kreider never paid interest, and they used to scold about it. The children were to have the money they got as inheritance. Those that had too much were to pay back again. Those that had not received enough were to receive from those that had too much. Kreider was before the auditors.

"The old man said so at the time he lived with us, about a year

[Kreider v. Boyer.]

before his death. He died about 17 years ago. Defendant and I often talked about it, and so did Leonard Boyer and I."

Margaret Boyer testified.—"I am the wife or widow of Leonard Boyer, who was a son of old Leonard Boyer. I heard old Mr Boyer say that he had now given his money among his children; that they must pay him the interest so that he must live; that Kreider had received his money too now and he never paid him any interest. It is so long that I cannot remember. I heard this talk several times; can't say how often; can not say how long since I heard it; it was a good while before the old man's death. He got it because he needed it. He bought a horse one time. He said those that had too much were to pay to those who had not enough; one had none at all. He said that after his death, those that had none should receive from those that had too much."

The court charged the jury that if they believed the testimony of the two witnesses that the money was advanced to Isaac Kreider as so much of his legacy or inheritance, the plaintiff was not entitled to recover; the amount of the note being greater than the residuary legacy.

The admission of the evidence and the legal effect given to it by the court in their charge, were the subjects of the assignment of error.

*Slenker* and *Miller*, for plaintiff in error, cited 8 *Watts* 39. 406, *Str. Purd. Dig.* 538. 788, sect. 48; 11 *Serg. & Rawle* 325; 7 *Serg. & Rawle* 493; 6 *Watts* 132, 4 *Rawle* 183; 2 *Watts* 90; 6 *Serg. & Rawle* 466; 2 *P. Wms.* 497.

*Merrill*, for defendant in error, cited 2 *Atk.* 48; 3 *Atk.* 77; *Ham. Dig.* 289; *Pl.* 78 79; 1 *Ball & Beatty* 298; 2 *Rawle* 304.

The opinion of the court was delivered by

KENNEDY, J.—Where a parent makes a provision for a child by his will, and *afterwards* gives to such child a portion in marriage, if a daughter, or pays a sum of money for establishing him in the world, if a son, the legacy is held to be adeemed. Hartop *v.* Whitmore, 1 *P. Wms.* 681. And in such cases parol evidence of the testator's declarations is admissible to show that the advancement was intended either to be an assumption of the legacy or a satisfaction of it *pro tanto.* Accordingly in Bigleston *v.* Grubb, 2 *Atk.* 48; where a bill was brought for a legacy of 500 pounds by a husband in the right of his wife, given her under the will of her father, notwithstanding he had received of the testator in his lifetime 500 pounds as a portion, parol evidence was admitted to show that the father gave the 500 pounds to the husband, in full of what he intended for his daughter under his will. Also in Rosewell *v.* Bennett, 3 *Atk.* 77, where B having by his will given all his real and personal estate equally among his children, and at the conclusion of it directed his executor to lay out a sum not exceeding 300 pounds in putting out the

defendant, his son, apprentice; and B in his lifetime afterwards laid out 200 pounds in putting out the defendant *clerk* to a person in the navy office, and died without revoking his will; evidence was allowed to be read of the testator's declarations, that his advancement should be taken as an ademption of the legacy. But then this can only be where the will is made anterior to the advancement, for without a will in being there can be no legacy, and consequently the advancement can have no relation to, nor take away that which does not exist. Such are the cases referred to, as also all others on the subject going to establish the same principle. In cases of intestacy, however, as the intestate laws are in force at all times as long as no wills are made, advancements may be made by a parent with a view of giving to his children some portion at least, if not the whole, of what would be coming to them of his estate after his death, according to the intestate laws of the commonwealth regulating the descent of his real and the distribution of his personal estates. But if a parent make advancements to one or more of his children, and afterwards make his will disposing of the whole of his estate among his children, without taking any notice of the advancements so made by him, it is conceived that each child will have a right to claim whatever is given to him or her by the will, without being liable to any abatement or reduction whatever, on account of such advancements, however great they may have been; because such is the legal effect of the last will of the testator, reduced to writing, which cannot be altered or changed by any subsequent verbal declarations made by him, as it would be contrary to the act regulating the making of wills. But the case under consideration is altogether different from any of the cases cited or mentioned; for the evidence shows most indisputably, that the money advanced by the testator to the husband of the plaintiff's intestate, was not only advanced before he made his will, but that it was advanced as a loan, to be repaid by the husband with interest: and that the testator accordingly took from the latter his single bill, securing the repayment of it. The money mentioned in the bill, thus taken by the testator of Kreider, the husband of his daughter, instead of being an advancement or gift made to Kreider on account of his wife, was money lent, and became a debt of the husband in every sense of the word, which he bound himself by the bill, to pay to the testator, with lawful interest, according to its tenor. This bill not being paid by the husband to the testator during his lifetime, was retained by the latter until his death, when it came into the possession of his executors, and has remained with them ever since. Now although it was competent for the testator, after having made his will, giving a certain portion of his estate to his daughter, then the wife of his debtor, to have released the debt, and to have given it to the husband his debtor, as an ademption or *pro tanto* satisfaction of the legacy bequeathed to his wife, yet the evidence offered for this purpose by the defendant, and received by

x.—F

[*Kreider v. Boyer.*]

the court against the objection of the plaintiff, and upon which the court afterwards left it as a question of fact to the jury, to be decided by them; whether the testator had not given it as an advancement in satisfaction of the wife's legacy, was wholly inadmissible and insufficient to prove any thing of the kind.   This evidence consisted merely of the verbal declarations of the testator, made to the witnesses after he had made his will, showing nothing more at the utmost, than that if the husband and his wife survived him, and the bill of the husband should still remain unpaid, it should then be considered as a payment in part, or in whole, of what he had bequeathed to his daughter, the wife, accordingly as it might be sufficient or insufficient in amount for the one or the other of those ends.   But the husband, notwithstanding the declarations of the testator given in evidence, still remained the debtor of the testator as long as the money mentioned in the will remained unpaid, or the bill uncancelled; and neither being done before the death of the testator, the money due on the bill at the time of the testator's death, actually formed a part of his estate—just as much as if it had been owing by a stranger; and seeing he had disposed of the whole of his estate by his will, it became the duty of the executors to collect it as any other debt owing to the estate, and to dispose of it, either in payment of the testator's debts, or the legacies under the will, if not required for the payment of debts.   Or as there was a portion of the testator's estate coming under the will to the wife of the husband, the debtor, the executors and he by mutual consent might have discharged or paid the debt and the legacy, so far as a defalcation of the one from the other, might have been sufficient for that purpose.   But this was not done during the life of the husband; and after his death, the bequest in the will being to his wife, who survived him, she became absolutely entitled to it, so that without her consent, the bequest coming to her could in no wise be appropriated to the payment or discharge of her husband's debt.   This, however, it does not appear, that she ever agreed to do; consequently, the plaintiff, being her representative, would seem to have a clear right to demand and receive the bequest given to her by the will of her father.   To give the declarations made by the testator, as testified to by Margaret Boyer and Barbara Boyer, the effect for which they were received by the court below, and submitted to the jury, would be either to alter and change the written will of the testator, by such subsequent verbal declarations, which can not be done under our statute regulating the making of wills; or to make such declarations of the creditor amount to a gift of the debt to the debtor, who was his son-in-law; or what is still, perhaps, more difficult to conceive, to convert it by such declarations of the testator after his death, into an advancement made to his daughter, for the purpose of adeeming the legacy given to her.   This last could no more have been produced by such declarations simply, than a change of the debt into a gift, could have been produced by them,

[Kreider v. Boyer.]

immediately upon the testator's death, or at any time previously thereto.   Though a consideration is not necessary to support a gift, yet, either an actual delivery of the thing itself given, where it is capable of it, and if not, something then in lieu thereof, that shall be deemed equivalent to an actual delivery of the gift, is indispensably necessary.   And this is equally requisite, whether the gift be *inter vivos* or *causa mortis;* because without it no title will pass. The maxim in this respect is, *donatio perficitur possessione accipientis.   Jenk. Cent.* 109, *pl.* 9.   Therefore, if it consist of a promise to pay money, the promise is revocable, and not binding until the money is actually delivered.   In accordance with this principle, it was held by the supreme court of New York, in Finck *v.* Cox, Executor, 18 *Johns.* 145, that a note drawn and delivered by a father, who had previously made his will, disposing of all his estate among his children, to one of his sons for 1000 dollars, payable sixty days after its date, declaring at the time of giving the note, that he intended it as an absolute gift to his son, and assigning as a reason for his doing so, that he was not so wealthy as his brother; that he had met with losses, and that he and his brother had had a controversy about a stall, was not binding, and that the payee could not recover the amount of it after his father's death from his executors.   So the principle of Flower's case, *Noy.* 67, shows clearly, that the declarations, proved to have been made by the testator in this case, were perfectly inoperative, and insufficient to convert the debt of his son-in-law into a gift, or an advancement for the purpose of adeeming the legacy.   In Flower's case A having borrowed 100 pounds of B, brought it at the day of payment in a bag, and cast it on the table before B, when B said to A, being his nephew, " I will not have it, take it you, and carry it home with you," this was held a good gift by parol, because the money being cast upon the table, was considered then as in the actual possession of B, and that A might well have waged his law. But the court said it would have been otherwise, if A had *only offered it to* B, for then it would have been a *chose in action,* and could not have been given without a writing.   But in the present case, the money owing by Kreider, the son-in-law, to the testator was never as much as even offered to be paid by the debtor, either at the time when the declarations of the testator were made, or at any other.   Now, if the testator had, at any time during his life, after making his will, given up the bill to Kreider, for the purpose of being cancelled, or had cancelled it himself, declaring that he thereby intended to satisfy, or take away so much of what he had by his will given to the wife of Kreider, it would probably have answered the purpose; but without something more having been done by him, than he ever seems to have attempted, there is no ground for defending against the claim of the wife's representative, to that portion of the testator's estate given to her by his will.   We therefore think the court erred, in receiving the evidence of Barbara

[Kreider v. Boyer.]

Boyer and Margaret Boyer, for the purpose of proving the declara-
tions made by the testator, and in submitting them to the jury as
evidence, upon which they might find a verdict for the defendant.

Judgment reversed, and a *venire de novo* awarded.