## Haverstock *against* Sarbach.

Loose declarations of a parent that he intended an existing debt should be an advancement, not substantiated by writing, not made to the child nor assented to by him, nor accompanied by any act, are not sufficient to destroy a debt secured by a legal instrument in full force, and change it into a gift by way of advancement, whether offered by the son to defeat the recovery of the debt, or by the representatives of the father against the son to defeat his claim for a distributive share.

ERROR to the Common Pleas of *York* county.

Daniel Roffensperger and Peter Bott, administrators of Philip Haverstock, deceased, against Jacob Sarbach.

This suit was brought on several obligations that were given by the defendant to his father-in-law, the said Haverstock, in his lifetime, viz:

1. A bond, dated 20th of March 1813, with condition to pay £47 on the 1st day of April 1814.

2. A bond, dated 25th of April 1817, with condition to pay $130 on the 25th of April 1818, with interest from date.

3. A bond, dated 2d of April 1821, with condition to pay $345 on the 1st of April 1822, with interest from date.

4. A bond, dated 1st of April 1824, with condition *to* pay $100 on the 1st of April 1825, with interest from date.

5. A note under seal, dated 30th of March 1811, for 3*l.* 17*s.* 2*d.,* payable in nine months after date.

Mrs Sarbach died about 1822.

Her father, P. Haverstock, died December 1831.

Defendant offered to read the following testimony of

Jacob Christ, another son-in-law of the said Philip Haverstock, viz: " He (meaning P. Haverstock) gave me money and asked a bond. I said I thought it was not customary to give bonds for money which was not to be given back. He said he could not write, nor keep a book, and for that reason he took bonds. He said I need not pay it back; he gave it to me for a start. He said he had given the others, or would give them, in the same way. I was the third married. He said he would take bonds from all, and then it would be easily settled. It is about twenty odd years or upwards since I first received money from him.

" I think I gave two bonds; together about $550. My wife is still living. I was not present when Sarbach received money, and know nothing about it."

To which plaintiffs objected, on account of the irrelevancy of the matter offered.

[Haverstock v. Sarbach.]

The court admitted the testimony, and signed a bill of exceptions.

Defendant then offered to prove, by Susanna Asper, a daughter of said Haverstock, and wife of Philip Asper, who is yet living, that her father said he would do by his children all alike; that he would give them all money, and take their bonds, but not to be paid, nor interest; and that then, after his death, they could all be made equal.

To which plaintiffs objected, for irrelevancy of the matter offered.

The court admitted the testimony, and signed a bill of exceptions.

The witness then testified as follows:

"He (her father) said he wanted no advantage of his children; that he would help them all on; that they should not pay it back, and should pay no interest. He could not read nor write. He said he would have writings, so that it could be seen what each child had got. He had eight children, all girls; he said it more than once; can't say how long ago, but the last time was not long before he died. My husband owes a bond, too; I hear it is a judgment bond, but I did not see it. Before my husband got the money, I begged him to take a judgment. He said it should not bear interest. I asked my father to take a judgment bond for security. He said he would have no advantage over his children—that one should have equal with the other."

The plaintiffs then offered to prove that the decedent held bonds and notes against others of his sons-in-law besides the defendant: some being judgment bonds entered up in the lifetime of the father; some were assigned by the father to third persons, and were sued; some were repaid by the obligors, with interest; on some, interest alone was paid; others were sued by the legal representatives of the decedent after his death, and judgment was suffered to go by default; one of these suits being against the witness, Christ; that the decedent, in his lifetime, complained that his sons-in-law did not pay him the interest they owed him; that at the appraisement, the sons-in-law and their wives, including the witness, Mrs Asper, were all present, (except Christ) and their bonds and interest (including those on which this suit is brought) were calculated and put into the inventory in their presence without objection.

The court allowed the plaintiffs to give in evidence that Sarbach was present and any thing which was said or done in his presence and hearing on the occasion referred to, in regard to the claims against him; and rejected the offer as to the residue, and signed a bill of exceptions.

Plaintiffs assign for error:

1. That the court below erred in admitting the testimony of Jacob Christ and Susan Asper.

2. And in rejecting the plaintiffs' offer.

*Mayer*, for plaintiffs in error, argued that the loose declarations of the intestate, with regard to his intentions, should not have been received to destroy the effect of a legal instrument which contained an obligation to pay, and convert it into an advancement which was not to be paid, and cited 10 *Watts* 54; 4 *Whart.* 128.

*Campbell* and *C. A. Barnitz*, for defendant in error. The modes of advancement by a parent to a child are so various, made to suit the particular circumstances of each case and the condition of the parties, that whenever the character of it becomes a question, it must be one of fact; and if so, the declarations of the parent, regarding his intentions on the subject of distributing his estate, seem to be the most satisfactory species of evidence. It cannot, therefore, be questioned that a debt may be converted into an advancement by parol evidence. 1 *Serg. & Rawle* 312; 6 *Watts* 86.

The opinion of the Court was delivered by

SERGEANT J.—The question to be considered in this case is presented by the first bill of exceptions. The suit was brought on several bonds executed by the defendant at different times, to his father-in-law, the three first before the death of the defendant's wife, and the others afterwards, for the payment of various sums of money, in about one year after their respective dates. The execution of these bonds is not denied, nor is there any allegation that they were paid or in any way satisfied by the defendant: but he alleges, that although they were complete and effectual bonds, sealed and executed in all the forms of law, and therefore importing a legal obligation to pay, yet, in fact, they never were intended to be what they purport; but that the father, alleging himself to be unable to write or keep a book, for that reason took bonds, intending that the money should not be paid, but be held by way of advancement. The evidence offered by the defendant to show this, was not of any thing said to the son-in-law himself, or, in respect to these identical bonds, to any person whatever, but of declarations made by the father to a like effect, to another son-in-law, (Christ) from whom the father took two other bonds, and to whom he said he had given the others, or would give them, in the same way : he would take bonds from all, and then it would be easily settled. Evidence was also received of the father's declaring to a daughter (Mrs Asper) that he meant to do by his children all alike ; that he would give them all money, and take their bonds, but not to be paid, nor interest, and then after his death, they would all be made equal.

The subject of advancement assumes a variety of aspects, and has different operations, according to circumstances. In what instances, and to what extent parol evidence is proper to show an advancement, must depend very much on the manner in which

[Haverstock v. Sarbach.]

the case is presented. Should it be alleged, after the death of an intestate, that a child had been advanced by money or property, which he denied, and there existed no evidence whatever to prove any transfer of property or money to him from his parent, it would hardly be contended, that the general verbal declarations of the parent, unaccompanied by any act or writing or other evidence, would suffice to cut off the child from his inheritance; and when this point occurred in the case of *Levering* v. *Rittenhouse*, (4 *Whart.* 130) it was held that they would not. But should the father, by writing, clearly charge a child with such an advancement, it would be evidence to prove as well the fact of money or property transferred, as that the transfer was an advancement; as was held by this court in *Hengst's Case*, (6 *Watts* 86). Again, should it appear by evidence *aliunde*, parol or otherwise, that money or property had passed from a father to his child, accompanied by contemporaneous declarations of the parent that it was an advancement, then, as part of the *res gestæ*, such evidence would be good to explain the nature of the transaction, and, if believed, would fix its character as an advancement, as well in respect to the parent so giving, as the child so receiving, and their representatives. Thus, it has been held, that if the father, by his will, bequeath a legacy to his child, and after the making of his will, adeems it by an advancement of money during his lifetime, parol evidence of his contemporaneous declarations is admissible. *Kreider* v. *Boyer*, (10 *Watts* 54); *Rosewell* v. *Bennet*, (3 *Atk.* 77). So in *Wentz* v. *Dehaven*, (1 *Serg. & Rawle* 312) the father, by writing not sealed, declared his intention to be to forgive a mortgage debt due by his son, and this was held competent evidence for the purpose.

In these cases the fact of the transfer of property, and the nature of the transaction, are fixed by positive evidence which permanently affects all parties. But loose declarations of a parent, that he intended an existing debt should be an advancement, not substantiated by writing, not made to the child nor assented to by him, nor accompanied by any act, are not sufficient to destroy a debt secured by a legal instrument, in full force and obligation as such, and change it into a gift by way of advancement, whether offered by the son to defeat the recovery of the debt, or by the representatives of the father against the son to defeat his claim for a distributive share, as was the case of *Levering* v. *Rittenhouse*, (4 *Whart.* 130). There the declarations of the father that he had changed the debt due to him by the son into an advancement, were offered, not by the son to repel the claim for the debt, but against the son; for the debt being barred by the statute of limitations, the attempt was to set it up as an advancement in order to defeat the son's action for a distributive share. But such declarations were held inadmissible, as not being of a sufficiently legal and fixed character permanently to bind the parties. If they

I. — 50

would not be evidence against the son, they ought not to be evidence for him, when the turn of events alone might happen to make that desirable. For these reasons, in *Kreider* v. *Boyer*, (10 *Watts* 54) where the attempt was to defeat the recovery of a legacy by a father to his daughter, by showing, from the verbal declarations of the father, that the daughter's husband had been advanced by the father by a payment of money, for which the father had taken the husband's note a few months before the making of the will, the evidence was decided by this court to be inadmissible, it being held that a debt could not thus be changed into a gift; there must be an actual delivery of the note itself, or something equivalent, to constitute a *donatio*, whether *inter vivos* or *causâ mortis.*

Here the offer was not even to show declarations by the father to the son, concerning the bonds on which this suit is brought, but that in relation to other bonds, the father had stated his meaning in taking them, and that his general object or plan was, to give to his children money and take bonds from them, without designing they should be paid. The effect of allowing such evidence would be, not to rebut an equity, but to overthrow legal instruments by loose, general, and uncertain declarations, and to make something equivalent to a writing or will for the decedent, by words spoken at random. This would necessarily lead into a wide field, and the meaning of the decedent must in that case be collected from all that he had said at any time or place, and to all persons, concerning his affairs, and in the end leave only conjecture to rest on, to be applied at discretion. Rights so important to families as those depending on advancement, require more safe and permanent rules to govern them.

The decision of this bill of exceptions makes it unnecessary to examine the other bill, it being an offer of rebutting evidence merely.

Judgment reversed, and *venire facias de novo* awarded.