# Yundt's Appeal.

13  575
128  282

An advancement is an irrevocable gift by a parent to a child, in anticipation of such child's future share of the parent's estate. *Debts* by the husband cannot be changed into advancements as against the wife, merely by her admission that "this we owe to father honestly."

Declarations of a parent, made after debts have been contracted, of an intention to treat them as advancements, are not admissible to produce that effect, where the declarations are not communicated to the child, nor accompanied by an act sufficient to obliterate the obligations as debts.

Such parol declarations are not admissible to convert a loan to the son-in-law into an advancement to the daughter, in order to defeat a legacy in favor of the latter, in the will of her father.

Where a testator directed that the share of his estate coming to his daughter, then a married woman, shall be kept in the hands of a trustee for her use, and interest thereon paid to her annually, so long as she remains the wife of her then husband, and in case of the death of the husband, the trust moneys to be paid to her; and in the event of her death, whilst thus married, then the trustee to pay the mother's share to her children, the husband interposing no claim to the interest. Held, that the children are entitled, on the death of their mother, in addition to the principal, to the *interest* which accrued, during her life, which had not been reduced into possession.

Executors are chargeable with interest on the sums ascertained to be in their hands, during the pendency of exceptions to their accounts.

Advancements to all of the heirs should be settled as of the same time, after the death of the testator; and the heirs last paid, are entitled to interest from the time when the other heirs received the balances due them respectively.

This was an appeal from the decree of the Orphans' Court of Lancaster county, by the executors of the will of John Yundt, deceased. John Yundt made his will, dated on the 23d day of March, 1829, and died in April, 1832. One of his daughters, Polly, had been long married to Joseph Horst, by whom she had several children, before the date of said will. Horst became insolvent. He owed to Yundt, the deceased, more than $6000.— *After* all of Horst's debts to said deceased had been contracted, John Yundt made his will, which provided as follows:

"Further, it is my will that all the remainder of my estate, after my said debts, expenses and bequests are distributed and paid, shall be divided, after first adding seven hundred pounds together with all the advancements heretofore made by me to my children, in ten equal shares, and then all advancements shall be respectively deducted from each respective share.

"And it is my will that the share which yet may come to my daughter Polly, now intermarried with Joseph Horst, shall be paid and kept in the hands of my son Jacob, in trust for the use of my said daughter Polly, in manner as will be hereinafter mentioned."

The said testator also directs the said trustee to pay to Polly Horst interest upon her share, at the rate of five per cent. per annum, so long as she remains the wife of Horst, and in case of

his death or the dissolution of the bond of matrimony, "then I give unto her and her children the said undivided ninth part of my land in Upper Canada, hereinbefore given in trust unto my said son Jacob Yundt for her use; and my said son Jacob shall, within one year thereafter, pay over unto her all moneys given to him in trust for her use as aforesaid. And if my said daughter Polly should die, being at the time of her death the wife of said Joseph Horst, then I give the said lands in Upper Canada to her lawful children, unto whom my said son Jacob Yundt shall also pay their said mother's share within one year thereafter."

The testator had nine children.

On the 28th April, 1832, an inventory of the testator's estate was filed, amounting to $7,870 75, exclusive of advancements.

In a book of the testator's the following advancement among others is charged, viz:

To Joseph and Mary Horst,                                $440 60

In another book of the testator is the following entry:

"1826, April 20th.—Acct. calculated between John Yundt and Joseph Horst, to the 1st instant, for rent and other accounts. Said Horst is indebted to said Yundt two thousand eight hundred thirty-seven dollars,                                                     $2,837 00

This entry was made by John Eby in the presence of Yundt, and Horst and wife, at whose request the entry was made; Polly, (Mary,) Horst's wife, saying to Eby, "John, write in the book, this we owe to father honestly."

There are also noted in the inventory bonds and notes due testator by Horst, amounting to                       4,736 68

In addition to which the following sum is said to be due from Horst to testator for note, rent and money paid on mortgage, (see testimony,)                      3,007 00

                                                      $10,580 68

On the 13th November, 1834, said executors filed their account, showing a balance in their hands of $21,887 13½, which balance the said executors distributed among Yundt's children, deducting from the share of each his or her advancement.

Joseph and Mary Horst received no part of this balance, because the advancements to Horst and wife amounted to more than the share of one child.

A subsequent account was filed by the executors.

An auditor was appointed May 10, 1847. The auditor reported finding a balance in the hands of executors, on August 16, 1844, of $37,360 49.

[Yundt's Appeal.]

Mary Horst had died and left six children, and in June, 1847, five of them petitioned the Orphans' Court for a citation to the executors to show cause why they should not pay to them their shares, &c. Citation awarded. Afterwards auditors were appointed, and on March 14, 1849, they reported a balance of $37,360 49, and deducted from Mary Horst's share, or one-ninth part, viz: $7,000 46, only an advancement of $440 60, and interest $377 00, in all $817 60. They reported the share of Mary Horst's children to be $6,183 86. From that amount they deducted for costs of audit $178 25, and the balance of $6,005 61½ they distributed equally among the six children of Mary Horst, deceased.

A deposition of John Eby had been taken in suits then pending in the District Court, in which he testified to the settlement between Horst and the testator, when Horst was stated to be indebted in the sum of $2,837 00. At the time of this settlement Polly, the wife of Horst, told witness to "write it in the book, this we owe to father honestly." The witness testified that "Yundt said several times that he intended to make all his children that one should get as much as the other, and that all accounts he had against his children, bonds and notes, should all be settled, so as to make them equal, out of his whole estate," &c. Whether Mrs. Horst was present when these declarations were made, did not appear certainly in the deposition.

Christian Rissor, affirmed—Mr. Frazer offers to prove by the witness a conversation between witness and John Yundt, about the time—the same year—of the execution of the will, as to his transactions with Joseph Horst, relative to Horst's having already received more than a full share of his estate, and which would diminish the shares of his other children at his death. Neither Joseph Horst nor his wife were present at the conversation.

Objected to by Mr. Stevens, who read 10 *Watts* p. 58; 4 *Whar.* 130; 6 *S. & R.* 466.

Rejected by the auditors.

Mr. Frazer excepts.

Exceptions were filed to the report of the auditors.

PER CURIAM: LEWIS, President.—We think, with the auditors, that the debt due by Joseph Horst to his father-in-law, John Yundt, was not an advancement to the testator's daughter, Mary Horst, and was not intended by the testator to be deducted from the share bequeathed for her separate use.

The method adopted by the auditors in calculating the interest is, under the peculiar circumstances of this case, confirmed.

The question whether the debt of Joseph Horst was to be regarded as an advancement, was one in which all the distributees were interested, as upon its solution depended their respective

shares of the estate. The controversy arose, not from the fault of either of the distributees, nor from the misconduct of the accountants, but from ambiguities in the testator's distribution. It is proper, therefore, that the whole estate should pay the costs. Instead of charging the whole costs ($178 25) to the share of Mary Horst, only one-ninth of the sum ($19 80½) should be so charged. With this correction the auditors' report is confirmed.

It was assigned for error:
. 1. There is error in that part of the decree of the court which says, "that the debt due by Joseph Horst to his father-in-law, John Yundt, was not an advancement to the testator's daughter, Mary Horst, and was not intended by the testator to be deducted from the share bequeathed for her separate use."
2. Also, in that part of the decree which says, "the method adopted by the auditors in calculating the interest is, under the peculiar circumstances of the case, confirmed."
3. Also, in confirming the decision of the auditors rejecting the testimony of Christian Rissor.
4. The court also erred in not directing an issue, as prayed for by appellants in their rejoinder, filed October 11, 1847.

The case was argued by *Frazer* for appellants, the executors.—He contended that debts can be turned to advancements, 1 *S.* & *R.* 312; 4 *Whar.* 130; 1 *W.* & *S.* 390–393; 10 *Watts* 54; 3 *Atk.* 77.

That interest should not be calculated on advancements, 5 *Barr* 413, Stehman's Appeal.

*Stevens*, contra.—That the declarations of the parent were not evidence to charge the debts as advancements, 1 *W.* & *S.* 390; 4 *Wh.* 130; 10 *W.* 54.

Parol evidence inadmissible to explain or alter a will, Jarman on Wills, 349 a. b.

Interest is chargeable while account is before auditors, 11 *S.* & *R.* 16.

Interest is calculated in reference to the time when distribution should have been made, to wit: in 1834, when distribution was actually made to the other legatees.

The opinion of the court was delivered by

BELL, J.—John Yundt, by his last will, dated March 23, 1829, directed the remainder of his estate to be apparently increased by the addition of all the advancements theretofore made by him to his children, and the aggregate thus ascertained to be divided into ten equal shares, to be distributed among certain of his children named, after deducting from the share of each child the sum

advanced to him or her by the testator. Among these children is named his daughter Polly, then intermarried with Joseph Horst, who was largely indebted to the father. The latter, sedulous as it would seem, to preserve for the use of his daughter such share of his estate as might be found coming to her, under the provision I have alluded to, created a trust for the preservation of the fund during the coverture of the daughter, with a direction to pay over to her the fund, absolutely, should the coverture be determined by the death of the husband; but should he survive his wife, then to distribute it among her children in equal shares.

That by this a benefit was intended for the wife, independently of her husband, is too obvious for doubt or hesitancy. It was not subject to be defeated by his improvidence, nor absorbed by debts he might contract. But its extent was to be ascertained by charging against her the values she had before received at the hands of her father, by way of advancement, or in the words of the tes-tament, "all *advancements* shall be respectively deducted from each respective share" before distribution made. It is shewn that all the daughters, on their intermarriage, were advanced by the father, in household furniture and other necessary articles, and some of them, as well as the sons, received assistance in cash. The articles thus furnished to Polly amounted to $440 60, of which a memorandum was made by the father, in a book, containing also an account of the advancements made to the other children from time to time. These entries wear no appearance of book accounts, intended to constitute the evidence of debts contracted by the children, but are, beyond question, simple *memoranda*, made to assist in carrying out the then entertained and afterwards expressed intention of the parent, to distribute his property equally amongst his sons and daughters. In this light they have been viewed by all the parties in interest; were so introduced by the executors into the inventory of the testator's effects, and are now accepted, all round, as indicating undisputed amounts to be treated as advancements within the meaning of the will. Of these, therefore, no question is made.

But Horst, the husband of Polly, was, long before the making of the will, indebted to his father-in-law for money loaned, money paid for him, and rents due from him. For the payment of these debts, bonds, notes, or other securities were taken, amounting in the whole to $7,737 68. In addition to this, on the 20th of April, 1826, on an account stated of further claims held by the testator against Horst, the latter was found indebted to the former $2,873 00, a statement of which fact, on the request of the parties, was entered in a book other than the book of advancements, Mrs. Horst at the time remarking, "this we owe to father honestly." Can this indebtedness of her husband be used for the purpose of absorbing Mrs. Horst's interest, under the will of her

father, and thus defeating the claim now made by her children, the appellees? It is conceded it cannot be so used, unless it can be considered in the nature of an advancement made to the husband and wife; for by the directions of the will, advancements alone are to be deducted from the residuary legacies. But advancement, in its legal acception, does not involve the idea of obligation, or future liability to answer. It is a pure and irrevocable gift made by a parent to a child in anticipation of such child's future share of the parent's estate. Regarded only in their inception, this cannot, with any show of reason, be asserted of the husband's liabilities. They exhibited no single quality of gift.— Obligation to pay was an idea inseparable from them, subjecting the husband to coercive process, under the pressure of which he would in vain have suggested that his father-in-law intended only the advancement of his daughter, unconnected with the thought of reclamation. Nor was the character of debt which attached upon the settlement of 1826 at all modified or affected by the remark of Mrs. Horst I have cited. If it was an obligation resting on the husband, at the moment of its ascertainment, nothing his wife could say would have the effect to make her a joint debtor, Dorrance vs. Scott, 3 *Wh.* 309; and if it had it would not help the appellants' case, for the sum ascertained would still retain all the characteristics of a debt. This brings us to the inquiry, whether the evidence offered of the declarations of the testator, tending to show an intention to treat the debts due from his children and their husbands as advancements, ought to have been received? Were this a case of intestacy, the question put must have been met by a flat negative under the authority of our own cases.

Nothing seems to be better settled than that the *ex parte* declarations of a parent of an intention to treat an existing debt as an advancement not communicated nor agreed to by the child, nor accompanied by an act sufficient to obliterate the obligation as a debt, can change it into gift by way of advancement, whether the evidence be offered by the child to defeat the recovery of the debt, or by the representatives of the parent to bar the child's claim to a distributive share of the parent's estate, Haverstach vs. Sarbach, 1 *W.* & *S.* 390; Levering vs. Rittenhouse, 4 *Wh.* 137; much less can such evidence be introduced for the purpose of saddling a daughter with the debts of her husband, as advancements made in anticipation of her future interest in the parent's property. This rule does not, however, exclude written entries made by the parent, of advancements, as is shown by Hengst's case, 6 *W.* 86, nor declarations contemporaneous with the transaction, declaratory of its nature. But a further difficulty lies in the way of the appellants. Their effort is either to explain the terms of a testamentary writing by parol, or to defeat a legacy by oral declarations inconsistent with it.

[Yundt's Appeal.]

Now, though it is true that where the language of a will has no apparent object upon which to operate, evidence *aliunde* may be used to introduce one, the general rule is, that no word or phrase in a testament can be diverted from its appropriate subject by extrinsic evidence, showing that the testator commonly, or on that particular occasion, used the disputed word in a sense peculiar to himself, or even in a popular sense, as distinguished from its strict and primary import, 1 Jarman on Wills, 358. In the instance before us, the word "advancement," as used in this will, has its appropriate object, as we have seen, and consequently there can be no apology for disregarding the general rule, excluding oral proof. That the legacy given to Mrs. Horst and her children cannot be thus defeated is abundantly established by Kreider *vs.* Boyer, 10 *W.* 54, a case which, while it fully recognizes the doctrine that a prior legacy may be *adeemed* by a subsequent advancement, and even that such an intention may be shown by the testator's declarations, utterly denies that such declarations are competent to convert a loan made by the testator to his son-in-law into an advancement of the daughter, in order to defeat a legacy given to the latter by the will of her father, executed after the creation of the debt. That Joseph Horst's liabilities to the testator were considered as debts, by every one having an interest in the subject, up to and after the testator's death, is apparent from every thing legitimately disclosed by the evidence, a view which seems to have been changed only by the discovery that the debts were not applicable as a set off in answer to a demand of the wife's legacy. It would seem indeed that Mrs. Horst herself, as well as her husband, labored under the misapprehension that such an application might be made of them, but it is almost needless to observe that this mistake will not confer upon them a quality which, without it, they do not possess. The question involved here has been so frequently discussed by this court, and particularly in Kreider *vs.* Boyer, that I deem it unnecessary to elaborate the argument. It will suffice to observe in conclusion, that the Orphans' Court was right in excluding the husband's debt from consideration when ascertaining the rights of the wife's children.

The second error assigned is sufficiently answered in the argument submitted for the appellees. It is true that interest is not generally chargeable on advancements. But the mode of calculation pursued by the auditors, and sanctioned by the Orphans' Court, produces the same result as though the advancements had been introduced without interest in the year 1834, when distribution ought to have been made, and the share of Mrs. Horst ascertained, and interest calculated upon that share up to March, 1849. No injustice is, therefore, inflicted on the appellants by the course adopted. There is no pretence for suspending the interest on the sums ascertained to be in the executors' hands, pending the

examination of their account of 1844.    They were bound to keep the fund at interest, unless peculiar circumstances intervened to excuse it, which it was incumbent on them to show.

We think it sufficiently apparent, looking to all parts of the will, that the testator intended the children of Mrs. Horst should receive, on the death of their mother, all that was payable to her during the coverture, but which from any circumstance she failed to receive.    It is plain a leading object was to exclude the husband from any participation, except so far as he might attain to the enjoyment of the annual interest through his wife.    But the direction is express to pay to her children their mother's share after her death, and this, we think, may be well taken to include the interest accruing during her life, and which was not reduced to possession.    At all events, the husband puts in no claim to it, and he is the only person who by possibility can dispute the children's right.    He cannot be compelled to do this for the benefit of the other legatees, which would be the sole effect of an adoption of the view urged by the appellants.

The claim of the husband, if he has any, being out of the way, there is nothing to narrow the claim of the children, as between them and the executors.

Judgment affirmed.