## Wallace *et al. versus* Keyser *et al.*

1. An intestate died seised of real estate, leaving six children, two of whom were indebted to him on a judgment recovered in his lifetime. Judgments were recovered against the same two by three other creditors, after his death. The heirs sold the land by private sale; and, in order to save the expense of judicial proceedings and to relieve the two shares from the lien of their judgments, the three creditors and the two heirs agreed that the purchase-money should go into the hands of a third person, to be applied by him to the payment of their judgments "as far as their shares of purchase-money may liquidate the same in the order of, and according to, their respective legal priorities, and not *pro rata.*" *Held,* the debt of the two heirs to the intestate could not be taken out of the proceeds of sale, before the payment of the judgment-creditors.

2. The proceeds of sale were not a fund in course of distribution, but purchase-money from a private sale by the heirs, put into the hands of a third person for the use of the judgment-creditors in lieu of the liens which they released.

3. The abstract right that an heir to real estate, owing a debt to his ancestor, should take his share less the debt, is imperfect, and cannot be enforced until the party or the fund comes into the power of the law.

CERTIFICATE from *Nisi Prius.*

This was a proceeding in equity, in which William H. Wallace and Katharine F., his wife, in right of the said Katharine F., John R. Savage and Sallie K., his wife, in right of the said Sallie K., Henry Keyser and Benjamin W. Keyser are complainants, and George F. Keyser, Francis Keyser, William H. Wallace, Maria Schively and William C. Lloyd are respondents.

[Wallace *v.* Keyser.]

Elhanan W. Keyser died intestate in February 1860, leaving real and personal estate. Administration was granted to William H. Wallace. The decedent left six children, viz., the above-named Katharine, Sallie, Henry, Benjamin, George and Francis, but left no widow. At the death of their father, George and Francis (with one E. S. Schively, the three composing the firm of Keysers & Schively), were indebted to their father on a judgment obtained in 1858; on which there remained due, after deducting their shares in their father's personal estate, $9484.73. After the decedent's death Malone and Taylor obtained a judgment against Keysers & Schively, which, being reduced to $618.01, was assigned to said W. H. Wallace. W. C. Lloyd also obtained a judgment against the same firm for $3904.03, and Maria Schively obtained a judgment against the same firm for $3000. The heirs having an opportunity to sell the real estate of the decedent, and all the parties being desirous to save the expense of judicial proceedings, and to sell it free from the liens on the shares of George and Francis, by agreements in writing, reciting that the judgments of Wallace, Lloyd and Maria Schively were liens on the shares of George and Francis, but not referring to the judgment of their father, stipulated, " that the said George F. Keyser and Francis Keyser, William H. Wallace, Maria Schively and William C. Lloyd have agreed and do agree mutually with each other that the said sale be made and the conveyance * * * executed, and that the shares of the purchase-money belonging to the said George F. Keyser and Francis Keyser, shall be paid to and received by said William H. Wallace, and shall be by him applied to the payment of the said judgments as far as the said shares of purchase-money may liquidate the same in the order of and according to their respective legal priorities, and not *pro rata*."

The proceeds of the sale were received by Wallace in accordance with the agreement, and amounted to $9993.14. Lloyd thereupon brought suit against Wallace to recover the amount of his judgment out of the shares of George and Francis in said proceeds. The bill, setting forth the facts, and averring, among other things, that the shares of George and Francis are only so much of their father's estate as may remain after the payment of their indebtedness to him, was brought by the heirs of the decedent to restrain Lloyd from prosecuting his suit, and praying that Wallace may be decreed to pay to the heirs the proceeds of the sale, and for general relief. Wallace, the defendant, answered that he had always been ready to pay to the heirs their shares of the real estate, but the heirs allege that they are entitled to the whole proceeds; and Lloyd alleges that his judgment, by virtue of the agreement, should be paid out of the shares of George and Francis, and he is advised that he cannot safely distribute the

[Wallace v. Keyser.]

fund until the rights of the claimants are judicially determined. Lloyd, another defendant, answered that the complainants are not proper parties to this bill, the administrator of E. W. Keyser being the proper person to recover a debt due the estate, and the debt is not a lien on their estate, and they negative the claim as an advancement, because they aver that it originated in a loan by the decedent. He denied that the shares of George and Francis were only what remained of their father's estate after paying their debt due him, and insisted that his judgment being a lien was prior to the claim of the estate, that the debt due the father was not a lien on the after-acquired property of George and Francis, and that by virtue of the agreement as to the sale of the property the judgments were to be paid according to priority of lien. The other defendants, Maria Schively, George F. Keyser and Francis Keyser, answered, submitting themselves to the court on the facts in the bill. A general replication was filed and proofs were taken. Upon argument, Read, J., delivered the following opinion :—

"This case is not reached by the 16th section of the Act of April 8th 1833, relating to intestates, the judgment due to decedent being simply a debt, and neither an estate by any settlement of the intestate, nor advancement by him in his lifetime;" and dismissed the bill, which was assigned for error.

*Edward Hopper*, for appellants.—1. As to joining administrator, the complainants do not seek to recover a debt. George and Francis have already had more than their shares of the estate, and the remainder belongs to the other heirs: Barnett v. Yohe, 4 Yeates 74.

2. The Intestate Act of 1833 makes no distinction between real and personal estate, but divides both equally amongst an intestate's children. Had Mr. Keyser bequeathed a legacy to these sons, their debt must be paid before they could get their legacy : Courtenay v. Williams, 3 Hare 539 ; Jeffs v. Wood, 2 P. Williams 128 ; Levering v. Rittenhouse, 4 Wharton 130; Thompson's Appeal, 6 Wright 345, and the cases therein cited.

This doctrine is of more force when the claim is by inheritance, for the debt would be known to the testator, and he could take care of it, but in intestacy the law shields the heirs' interest. Land and personal estate are on the same footing : McFadden v. Geddis, 17 S. & R. 336 ; Keim v. Muhlenberg, 7 Watts 79. An heir indebted may be treated as advanced to the amount of the debt : Springer's Appeal, 5 Casey 208. It is the equitable principle which is urged, not mere accuracy of definition.

This principle is thus worked out amongst the heirs themselves, but as creditors can take only their debtor's interest in the estate,

[Wallace *v.* Keyser.]

it would work the same injustice to let creditors come in : Strong's Executors *v.* Bass, 11 Casey 333.

The agreements were substituted for legal proceedings, and the creditors could get no more than by such proceedings. The judgments were liens upon the interests of the sons, which were only what *they* were *entitled to.*

The sons and their creditors could not by agreement divest the rights of the other heirs. The Act of April 14th 1843, for attaching the interests of a debtor in land, &c., of a decedent, in satisfaction of a judgment, provides : " Section 1. That the same rights in all respects which the debtor may have, and no greater in any respect whatever, are hereby placed within the power of the attaching-creditor."

The Act of July 27th 1842, § 2, as to foreign attachments, is to the same purport. The Act of April 10th 1819 authorizes the issuing of the attachment at any time after the interest accrues, by reason of the death of the decedent. Distribution, although postponed, is to be made according to the rights as fixed upon the death, and are to be determined by throwing into *hotchpot* what the children received from the decedent in his lifetime. George and Francis having received from their father more than their shares, could now have nothing from his estate : Earnest *v.* Earnest, 5 Rawle 213 ; Levering *v.* Rittenhouse, 4 Whart. 130 ; Thompson's Appeal, 6 Wright 345 ; Keim *v.* Muhlenberg, 7 Watts 79 ; Strong's Executors *v.* Bass, 11 Casey ·333 ; Springer's Appeal, 5 Id. 208 ; McConkey *v.* McConkey, 9 Watts 352 ; Manifold's Estate, 5 W. & S. 340. The true view is that the heir has received all his share, and " set-off," " retainer," &c., are not involved in the inquiry.

Barnett *v.* Yohe, and Manifold's Estate, *supra,* and Ilgenfritz's Appeal, 5 Watts 25, decide, that a debt due to an estate is part of it, and an heir who owes a debt is to be charged with it in the distribution of the *real* estate. The ground on which Ilgenfritz's Appeal was overruled in McConkey *v.* McConkey, did not affect this point.

*R. C. McMurtrie* and *J. W. Paul,* for appellees.—1. No one but the administrator can recover a debt due the estate : Lee *v.* Gibbons, 14 S. & R. 110 ; Lee *v.* Wright, 1 Rawle 149 ; Viner's Abridgment 222–25 ; Kater *v.* Steinruck, 4 Wright 501.

2. If it were the administrator claiming, he would have no right, for he would claim as a creditor by a debt which was not a lien, while the defendant's was : Rundle *v.* Ettwein, 2 Yeates 23 ; Calhoun *v.* Snider, 6 Binn. 135. The rights of the heirs in partition are nothing to the purpose : the parties have precluded themselves from those rights by selling their shares, thus leaving the shares of George and Francis severed from them as heirs.

3. As to their own shares, the remedy of the complainants is at

[Wallace v. Keyser.]

law: as to the other shares, they were not parties to the agreements by which Wallace received the money, and there was no trust created for them. Wallace is bound to distribute according to the agreement.

4. There is no advancement, for they claim on a judgment. To allow the debt of an heir *per se* to diminish his estate, would introduce secret liens: if they abandon anything requisite to the lien, it is lost.

*E. Hopper*, in reply.—1. It is assumed that George and Francis had an estate in the land, but they had no estate; they had received their share. The claim is not made on the judgment as such, but as a debt which would be as good without a judgment as with it.

2. The creditors of George and Francis are estopped by the agreement from claiming more than they would have been entitled to if proceedings in partition had been resorted to.

3. This is a case of trust and account; all the parties are before the court on a question, in which one decision will settle all the rights.

4. The right to equal distribution of an estate is not a secret lien. The heirs did not part with their estates, leaving the shares of George and Francis unsold; the whole was sold together, and the rights and equities remained as at the time of the decedent's death.

The opinion of the court was delivered, March 5th 1856, by

AGNEW, J.—The debt set forth in the plaintiff's bill was simply a judgment of Elhanan Keyser, the intestate, against his sons George and Francis, and is not alleged to be an advancement. The money in the hands of Wallace, the defendant, was not a fund in the course of distribution, but merely purchase-money arising from a private sale by the heirs of the intestate of the real estate placed in his hands for the use of the judgment-creditors of George and Francis in lieu of the liens they had released. The case does not fall within that numerous class of decisions, holding that the debt of a legatee or distributee may be set off against the claim for the legacy or share in a court of law, or retained from a fund to be administered in a court of equity: Earnest v. Earnest, 5 Rawle 213 ; McConkey v. McConkey, 9 Watts 352 : Manifold's Estate, 5 W. & S. 340 ; Springer's Appeal, 5 Casey 208 ; Strong's Executor v. Bass, 11 Casey 333 ; Thompson's Appeal, 6 Wright 345.

In these cases the debtor is seeking the aid of the law, and is met by the principle that he must do equity before he receives it. But the plaintiffs here, without an advancement which diminishes the share, or a lien which encumbers it, are seeking active aid

1 P. F. SMITH—32

[Wallace *v.* Keyser.]

from a court of equity, upon principles of mere abstract justice. Abstractly, it is right that an heir to real estate who owed a debt to his ancestor should take his share less the debt, but the right is imperfect, and cannot be enforced until the party or the fund comes into the power of the law. In an action of ejectment, if the defendant should set up an independent debt against the plaintiff to bar recovery, the equity would be precisely of the same description. But equity in this respect follows the law. By the Intestate Act the realty descends in fixed proportions, subject to no diminution of quantity, except by advancement or settlement; and this only by a legal retrospect, constituting it a present portion of the entire estate. It makes no difference whether the advancement was in land or money, but the law founds itself on the intention of the ancestor, making it a present portion of his descendable estate in advance of his death. Hence the intention must be disclosed by acts or declarations legally fixing this as the mind of the testator. This fact may be difficult of discovery, but nevertheless is clear in principle: King's Estate, 6 Whart. 370; Haverstock *v.* Sarbach, 1 W. & S. 390; Levering *v.* Rittenhouse, 4 Whart. 130; Lawson's Appeal, 11 Harris 85; and a debt cannot be loosely turned into an advancement: Roland *v.* Shrack, 5 Casey 125; Haverstock *v.* Sarbach, *supra.*

An heir needs no aid from a court of law or equity. His share being fixed by his relation and possession taken by entry, he stands on his legal right of quantity against all claims, except by advancement or settlement, operating by way of qualification in the law itself which declares his proportion.

In such a case equity cannot intervene against the law to administer a mere abstract principle of justice. Unless he is compelled to ask the aid of equity to come in upon a fund derived by conversion of the estate, there is no means of reaching him for a debt, except by the ordinary course of judgment and execution.

Ilgenfritz's Appeal, 5 Watts 25, has no application to this case; and the only point decided—that grandchildren take by substitution, and not by representation—has been overruled in McConkey *v.* McConkey, 9 Watts 352. Manifold's Estate, 5 W. & S. 340, was decided on the ground that the fund was in the hands of the administrator for distribution, enabling him to retain for the debt of the son. Springer's Appeal, 5 Casey 208, was also a case of distribution; and the expression of Lowrie, J., that in distribution the debt of an heir may be treated as an advancement, had reference to the fact as found in the court below, and not to the question now before us. There is nothing in the 16th section of the intestate laws countenancing the idea of deduction, except by way of advancement or settlement.

Finding no error in the record, the judgment is affirmed, with costs against the appellants.