# Christy's Appeal.

1. An advancement is an irrevocable gift, by a parent, who afterwards dies intestate, of the whole or a part of what it is supposed the child will be entitled to on the death of the party making the advancement.

2. Whether the conveyance of property, by a father to a son, is to be considered as an advancement or a gift, depends on the intention of the grantor at the time the conveyance is made.

3. The declarations of the grantor at the time of making the conveyance, or of the grantee at the same time, or afterwards, are evidence, from which it is to be determined whether the conveyance is a gift or advancement.

4. In the distribution of an intestate's estate, a gift to a child, from any one except the intestate, is not to be brought into hotchpot.

APPEAL from the decree of the Orphans' Court of *Westmoreland county.*

This case presents the following facts, to wit: The real estate of James Christy, which passed into partition, was valued at $10,033.36, and was divided into five shares. Afterwards, James Christy, a son, and Robert Borland, who had been married to a deceased daughter, and guardian of his minor child, presented their petition to the said court, alleging that a tract of land which had been conveyed by James Christy, Sr., to his son William, and not included in the above valuation, was given to him as an advancement.

John Armstrong, Jr., Esq., was appointed by the Orphans' Court, " a commissioner, to take testimony in regard to the advancements made by the said James Christy, deceased, to his children, and report the same to the court, with his opinion on the same."

*Commissioner's opinion.*—" From the testimony, as taken before the commissioner, it does not appear that James Christy, the deceased, had settled upon his son William any portion of his real estate which could be regarded as an advancement.

" It is true, the evidence shows, that the said James did sell and convey unto the said William, a certain tract of land in Salem township, containing 180 acres and 120 perches, by deed, dated the 6th day of October, 1837. But the consideration mentioned in said deed was, 'natural love and affection for the said William Christy,' his son, and 'services rendered' by said William, and, also, in consideration of 'five hundred dollars,' which would make William a purchaser, for a valuable and good consideration ; and the commissioner is of opinion that the parol testimony is not clear and strong enough to change it into a gift, and impress upon it the qualifications of an advancement.

" But this case assumes another aspect. From the testimony of Mrs. Christy, it appears that $2000 of the money paid sheriff

Nicolls for the purchase of the farm which James Christy afterwards sold to William, came from Mr. Stewart, her father, and the grandfather of William, ($1500 in the lifetime of the said Stewart, and $500 after his death;) that the land was purchased for William, but the deed was taken in the name of the father, William being a minor at the time; that William gave his bond for $500, the money-consideration in the deed, which he afterwards paid; and that in buying the land from sheriff Nicolls, and conveying it to William, he was only carrying out her father's intentions and hers, in regard to the money received from her father. From this it would appear that the land conveyed to William, (except 40 acres, amounting to $500, which was paid by William,) was not the estate of James Christy, the father, but was the estate of Mr. Stewart, the grandfather of the said William, and, therefore, could not be considered as an advancement made by the father.

"In *Lentz* v. *Hertzog*, 4 Wharton, Rep. 523, the Supreme Court say, that ' a gift proceeding from other than the father, is placed by law on the same ground as a fortune acquired by the skill and industry of the child, and this, it is not pretended he is bound to bring into hotchpot.'

"The commissioner is, therefore, of opinion, that whether this land be regarded as the estate of the father, or of the grandfather, it cannot, in either case, be considered as an advancement; and, such being the case, the said William was not bound to bring this land into hotchpot before he could claim a share out of his father's estate."

The evidence upon which the claim of advancement was made, is recapitulated in the opinion of the Supreme Court. The Orphans' Court reversed this opinion of the commissioner, and adjudged that the land granted to William was an advancement, except $500 paid him.

From this decree of the court, William Christy appeals, and assigns the same for error.

*Kuhns*, for appellant, referred to *Lentz* v. *Hertzog*, 4 Wh. 523; 1 Phil. Ev. 426; *Haydon* v. *Mentze*, 10 S. & R. 333; *King's Estate*, 6 Wh. 370.

*Foster* and *Cowan*, for appellees.

The opinion of the court was delivered January 4, 1858, by

Woodward, J.—An advancement is an irrevocable gift by a parent, who afterwards dies intestate, of the whole or a part of what it is supposed the child will be entitled to, on the death of the party making the advancement. Whether the conveyance of property by a father to a son is to be considered as an advanced

portion, or a gift, or partly one and partly the other, depends on the intention of the grantor at the time the conveyance is made, and of this intention the declarations of the grantor at the time, or the admissions of the child at the time or afterwards, are evidence.     But in the distribution of an intestate's ,estate, a gift to a child proceeding from any other than the intestate, is placed on the same ground as a fortune acquired by the skill and industry of the child, and is not any more than that, to be brought into hotchpot; *Hubbert* v. *Borden*, 6 Wh. 87 ; *King's Estate*, Ib. 370 ; *Lentz* v. *Hertzog*, 4 Wh. 523 ; *Riddle's Estate*, 7 H. 433 : *Osgood* v. *Breed's Heirs*, 17 Mass. 358; *Newman* v. *Wilbourne*, 1 Hall, Ch. R. 10.

Applying these principles to the facts found by the commissioner or to the testimony which he has reported, it is impossible to regard the conveyance of 6th October, 1837, as an advancement.    Both the deed and the articles of sale on which it was founded, acknowledge a valuable as well as a good consideration. Natural love and affection, services rendered, and five hundred dollars paid, are the considerations expressed in the conveyance.  And the evidence proved four and a half years' labor and services by the son after he was of age, for his father, and the payment of the five hundred dollars.    It is probable, nay quite certain, however, from the evidence, that these services, and the cash payment, were considerably less than the value of the farm in 1837, and might not the excess have been an advancement?  Assuredly not, because the money with which James Christy bought the farm, came from his wife's father, Mr. Steward, who advanced it for the purpose of buying the farm for William.    Mrs. Christy is very explicit on this point.    " My father in his lifetime gave me $1500, and I gave it to my husband, and he took it to Robstown and bought the farm from sheriff Nicolls.-    The amount paid to sheriff Nicolls for the land was $2400.    After my father's death I got $500 from his estate, and gave it to my husband to pay for this land for William.    He was a minor at the time it was bought.  In buying this land and giving it to William, (my husband) was carrying out my father's intentions, and mine, in regard to the money which I received from my father."    Elsewhere she states that when her husband conveyed the land to William, the latter gave his bond for $500, and that " when he paid it he gave his father $50 also, because he had kept my mother."

- If this is a true account of the matter, and the auditor believing it, we are not to doubt it, James Christy was only trustee of his son William, and never the owner of the land.  His deed then, instead of being either a gift or an advancement, was merely a conveyance of the legal title to the *cestui que trust,* and in execution of his trust.    The advancement was by the grandfather and not the father.   In distributing the estate of the latter, therefore,

his heirs have no more right to insist that William should bring this bounty of his grandfather into hotchpot, than that he should give them the benefit of an estate earned by himself.

But it is said the declarations of the parties prove this to have been an advancement by the father. The declarations which could have such effect, in the face of the explanation given by Mrs. Christy, would need be very strong, full and precise. Such as they are, they amount to but little.

In the first place, no witness undertakes to repeat any declarations of William Christy, at the time he made the conveyance. If it was not an advancement by him then, what he said about it afterwards, not in the presence of William, could not make an advancement of it. James M'Farland details a conversation between old Mr. Christy and himself, when they were working on the road, shortly after he had got the farm, when the old man was complaining of his taxes being pretty high, "but he said they would be lighter now, for he had given William one of his farms—and I would not be certain of the two words he came over—but it was either all he would give him, or all he would get; that he thought he had given him more than his share; that he would hardly have as much for the rest, when it was divided."

To Jacob Kipple, old Mr. Christy pointed out the corner and line between him and William, and said he had surveyed William's part off, and that was the line between them.

The conversation which an old man has with his neighbors as to what he has done, or proposes to do with his lands, is the most equivocal and unsatisfactory evidence of title that is ever brought into a court of justice; but here it avails nothing, for not having accompanied the deed, it cannot change or qualify the effect which the law attributes to the delivery of that. And it is well that such is the rule of law, for whilst his wife's testimony proves that old Mr. Christy was only a trustee of his son, and his articles of agreement and his solemn deed proves that William was at the least a part purchaser, these declarations to the neighbors import that the old man had been the absolute owner of the farm, and that he had given it out and out to William, for his portion. Such is generally found to be the accuracy of reported conversations, when they come to be tried by tests that are reliable.

Next as to the declarations of William. These are evidence against him on a question of advancement whenever made. But what do they amount to? John Steele had a conversation with him on the road between the Christy farms, after the old man's death :—"I asked him if he was getting a share of the old man's estate, and I understood him to say he was not." John Baker, at his shop, had a conversation with William, sometime after the death of his father :—"I asked him if his father had made a will, and he told me he had not—then says I, you will all come in for

[Lowrie's Appeal.]

equal shares, and then he told me, I don't look for anything there, or I don't want anything there, I leave that for the rest."

These sum up what equivocal expressions might be evidence of a parol surrender of his interests in his father's estate, if they had been accompanied by acts sufficient to create an equity in the other heirs, but on the point in question here, they prove nothing. Not a word was said about the conveyance of 1837, whether it was a gift, an advancement, or a purchase; and we have no authority to make such application of what was said, as would qualify the effect of that instrument.

For aught that appears on the record, William has a perfect right to share in the distribution of his father's estate, and that without bringing the value of the farm he holds under the deed of 1837, into the common fund.

The decree of the court, reversing the report of the auditor, and adjudging that the land granted to William Christy, was an advancement, except the $500 paid by him, is reversed and set aside, and the record is remitted to the Orphans' Court, that distribution may be made according to law. The costs of this appeal to be paid by the appellees.