# Appeal of Jacob J. and David R. Miller.

107    221
38SC ³426

1. While it is true that a conveyance of land by a parent to a child in the form of a gift is, *prima facie,* an advancement, yet no such presumption arises when the transaction assumes the form of conveyance for full value.

2. A. conveyed certain tracts of land to his sons B. and C. by deeds of bargain and sale, each of which expressed a consideration equal to the full value of the land, the payment of which was recited in the deeds and acknowledged in the appended receipts in the usual form.

    *Held,* Upon the distribution of A.'s estate, that the court in each case would assume the transaction to be a sale by the father to his son for a valuable consideration paid ; and that the burden of proving that the conveyances were advancements was upon those who alleged it. The evidence introduced for this purpose, held insufficient.

3. The mere *ex parte* declarations of the father, in such case, made in the absence of his sons, and not communicated nor agreed to by them, were held incompetent to affect their interests.

4. Storey's Appeal, 2 Norris 95, and Boyd's Appeal, 2 Norris 97—distinguished from the present case.

5. It was claimed in regard to two of the deeds that they were never delivered, and that under the Statute of Frauds they were void as evidence of a sale of the lands therein mentioned; but they were nevertheless offered in evidence to show advancements to the grantees.
   *Held,* that if the deeds had never been delivered they were worthless for every purpose, and were therefore no proof of advancements.

June 11th, 1884. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Appeal from the Orphans' Court of *Franklin county :*   Of May Term, 1884, No. 13.

Appeal of Jacob J. Miller and David R. Miller, administrators of John Miller, deceased, from a decree of said court, sustaining exceptions to the report of an Auditor, appointed to audit the account of said administrators and make distribution of the fund in their hands.

John Miller died, intestate, November 22d, 1880, and Eve, his wife, died intestate on September 6th, 1881.   They left surviving them two sons, Jacob J. and David R. Miller, and one daughter, Susan Miller, afterwards Mrs. Benjamin Funk. Jacob J. and David R. were appointed administrators of John Miller's estate, and filed their final account in December, 1881, by which they charged themselves with $6,203.70, consisting chiefly of notes of which they were the makers.

Before the Auditor, (Lyman S. Clarke, Esquire), appointed to make distribution of this fund, Mrs. Funk contended that the accountants must charge themselves with, and bring in for distribution, the consideration money mentioned in certain deeds executed by John Miller and wife to the accountants.   It appeared before the auditor that John Miller and his wife, by deed dated March 19th, 1860, conveyed a certain tract of land to Jacob J. Miller, the consideration recited in the deed being $5,971.50.   By deed dated April 2d, 1860, they conveyed a tract to David R. Miller, the consideration recited being $7,591.00; and by deed dated April 19th, 1864, they conveyed a tract to Mrs. Susan Funk for $5,361.56. These deeds were all duly recorded.

Subsequently, on May 17th, 1873, John Miller and his wife executed a deed to Jacob J. Miller, conveying to him another tract of land, (part of the " Middle Farm,") the consideration therein recited being $4,178.56; and on the same day they conveyed another tract, also part of the " Middle Farm,"

to David R. Miller, the deed reciting a consideration of $6,054.50. These last mentioned deeds were not delivered to the grantees, but were retained by John Miller during his lifetime, and being found among his papers after his death, were recorded by the administrators December 13–17, 1880.

At the time of the execution of these deeds in 1873, the said Jacob J. and David R. Miller were in possession of the land thereby conveyed, exercising acts of ownership, and so continued in possession up to the time of their father's death.

Promissory notes in favor of John Miller, amounting to $6,075.54, drawn by his sons, were found among his papers after his death, and also two $1,000 notes dated April 12th, 1873, in favor of Mrs. John Miller, drawn by her sons, not payable absolutely, but only so much thereof as should be needed to support her after her husband's death. These latter notes were afterwards cancelled with the consent of Mrs. Funk.

Mrs. Funk, the exceptant, claimed before the Auditor that the above deeds, by John Miller to his sons, especially those executed in 1873, were intended as advancements to them, and not as sales. To establish this position she called some twenty witnesses, none of whom, however, as the Auditor reported, were present at the execution of the deeds. These witnesses testified to conversations subsequent to the execution of the deeds, by John Miller and by Jacob and David, to the effect that the sons borrowed money from their father and he took their notes therefor; that the notes which John Miller held against his sons were for borrowed money and not for purchase money of real estate.

Jacob Wetzell, Sr. testified that he borrowed from John Miller in 1871, $100; that he paid it back after harvest because the old man told him that he wanted it for Jacob. He told this witness that he had divided his land between his boys, but had not given them their deeds. That if they would fix up he would give them their deeds.

George Lehman testified that in 1879 or '80, the old man told him that he had no money, that he had given it all to the boys, that all he owned was the place where he lived. Said he had divided his farm.

Lydia Lehman, wife of the above witness, testified that she heard the old gentleman say that he had no money, said that the boys had his money.

Daniel Leckrone testified that he borrowed from John Miller about 1864, $1000.00; that he paid it back in the spring of 1874 or 1875; that the old man said that David wanted the money.

Mrs. Susan Funk the exceptant, testified, that she was pres-

ent on the 8th of December, 1880, when her brothers met to examine the papers; that they took their deeds out of the bureau drawer, belonging to her deceased father's estate, and put them in their pockets; that Jacob said when he put his in his pocket, that that is what he wanted long ago; that in the same drawer they found promissory notes against Jacob and David; and also one against herself; that the boys said that the notes were for borrowed money.

Many other witnesses gave testimony to the same effect.

The accountants on the other hand contended that John Miller sold them the lands as in the several deeds set out; and, as to the tracts conveyed by the deeds of 1873, that he took their notes for them—and further that the notes against the accountants found among the decedent's papers after his death, were in part for purchase money of said lands.

They produced a number of witnesses, by whose testimony they endeavored to show, from the declarations of John Miller that he sold the land to them and took their notes therefor.

Catherine Brown who lived in John Miller's house as a servant, testified that about the middle of April, 1873, the boys, Jacob and David met there to make a settlement; that they met in the kitchen; that there was present John Miller and wife, Jacob and David and herself; Mr. Miller said that he had got the boys there to make a settlement and to sell them the land; the boys said it was all right, that they had come to buy the land. They said that they would buy and give their notes for it. The notes were given; I saw them; each one gave a note; the deeds were not there that day; grandpapa said he would get them in a few weeks and hand them over to the boys; they then separated; I cannot say that they left their notes there; I did not see the notes after they were signed; a few weeks after that the boys came there again; we were all together in the kitchen; grandpapa Miller went out of the kitchen and brought the deeds in and handed them to the boys and they refused to take them, they said that he might keep them as long as he lived; when he handed them the deeds he said here is the deeds for the land I sold you.

In addition to this the accountants showed by many witnesses that the old gentleman said on various occasions, that he had sold the land to the boys. To Henry Oaks he said that he had sold to Jacob and David their land, and had made them their deeds, and if they would give Mrs. Funk their notes for her share of the notes which he held against them for the land, it would all be fixed. To Alfred Brown he said I do not own the land, I have sold it to the boys, I only own the farm at the mill.

Samuel Shiffler testified that John Miller told him that he

had sold the land to Jacob and David, and that he now had to pay for shingles which he (Shiffler) was then making on the land. David Baker testified to having heard the same conversation.

Many other witnesses were called who gave similar evidence.

From all the testimony the Auditor found that the lands were sold to the sons, and not given as advancements, and he therefore reported, that they should not be accounted for in the distribution of the estate.

Exceptions filed to this report by Mrs. Funk were sustained by the court, ROWE, P. J., delivering the opinion which was, inter alia, as follows:

"The first question is, whether the conveyances of 1860 were *gifts* or advancements, and then we have to consider whether the deeds of 1873 were *sales* or advancements. . . . . . Manifestly the children were not buying the (first mentioned) farms from their father. That is I believe not even alleged. If it be alleged every thing makes against it. Here is a father with three children making a deed to each for land of about the same value about the same time, recording the daughter's deed but retaining it, which the sons after his death hand over to her, and speaking to Mr. Oakes he says I have *given* to each of my children lands. I wish to make them equal. I have made them so by this conveyance to Mrs. Funk. The farm made over to each child was then either a pure gift —a present—or was an advancement, that is a gift to be accounted for in the distribution of the father's estate.

Now these three farms constituted a considerable part of John Miller's possessions, one half perhaps of all he owned. Each one of them was of so much value compared with the father's whole fortune, that it would, standing alone, be presumed to be an advanced portion. But since each child got a farm, it may have been a pure gift. If so, why put in the consideration so carefully? why not say, 'in consideration of one dollar and natural love and affection?' The exactness with which the value was stated meant something and could only mean that the farm given should be accounted for at so much. Such is the inference and there is nothing against it. Or if we place in the other scale over against this certain and clear-speaking fact of the accurate statement of the consideration, the uncertain and confused words of a witness recalling expressions after twenty years heard in casual conversation by one not interested, and which are susceptible of two meanings, the one much outweighs the other. The single expression ' that they had been made equal up to that time ' is the only one that can be laid hold of to support the view of a pure gift or present. But how made equal? By the purchase of the

11 OUTERBRIDGE.—15

H. G. Funk place and the gift of it to Susan? Before that they were not equal. Each son had a farm, but the daughter had none; now she had a farm also. But only in that sense did he regard her as equal, because he himself placed a differ-ent value on the three tracts, and said David's was worth $2,600 more than Susan's. These conveyances must then be treated as advancements. . . . . . (as to the deeds of 1873). The case now stands thus: Jacob and David claiming the middle farm as purchasers, are put to prove it. They have no writing whatever showing a sale. They are unable to show any part of the purchase money either paid or secured, unless it be in the two notes of April 12th, 1873. But the weight of the evidence is that even these were for borrowed money. The claimants then, have nothing but a few declara-tions of John Miller that he had sold the land to them where-with to support their title to this valuable farm.

An equal distribution among children best accords with our notions of right. Mrs. Funk, if she prevail in this case, will still have received less than her brothers, but the in-equality will not be great and will result from her father's rightful action in advancing his sons. But I can not con-sent that they shall deprive her of her equal share in the middle farm—seeing that her father died intestate—unless they bring satisfactory proof that they bought their respec-tive pieces of it from their father. Their possession of the land is no proof of purchase and they show little or nothing else.

It is clear to me beyond a doubt that John Miller gave his sons these lands by way of advancement, and that they were not to be paid for.

All the farms conveyed by John Miller to his children must therefore be brought into the distribution at the value he fixed upon them in the respective deeds."

The court accordingly entered a decree setting aside the Auditor's report and directing all the farms to be brought into the distribution by the administrators. Whereupon the said administrators, Jacob J. and David R. Miller, took this appeal assigning for error the decree of the court.

*John Stewart, O. C. Bowers* and *Orr & Gillan*, for appellants. —The contention of the appellants is not that the conveyances to them were gifts, but sales; and it has never been decided that where the question is whether a conveyance by a parent to a child is a sale or an advancement, the presumption is in favor of an advancement, especially where, as in this case, the deed on its face imports a sale for full and valuable consideration.

*George W. Welsh* and *Stenger & McKnight*, for appellee.— Nothing is better settled than that a conveyance of land by a father to a child, either directly or by payment of the purchase money and having the deed made to the child is *prima facie* an advanced portion, and this presumption is greatly strengthened when the value of the land bears any considerable proportion to the father's whole estate: Dutch's Appeal, 7 P. F. S. 461; Weaver's Appeal, 13 P. F. S. 311; Storey's Appeal, 2 Norris 95; Boyd's Appeal, 2 Nor. 97.

Mr. Justice CLARK, delivered the opinion of the court, October 6th, 1884.

It is certainly true, that a conveyance of lands, by a parent to a child, in the form of a gift, or the payment by the parent of the purchase money of lands conveyed to the child, is prima facie, an advanced portion; and the presumption of an advancement, in such a case, is greatly strengthened when the value bears any considerable proportion to the parent's whole estate. This rule of law is well settled under our decisions: Dutch's Appeal, 7 P. F. S. 466; Wagner's Appeal, 2 Wr. 122; Murphy *v*. Nathans, 10 Id. 508; Weaver's Appeal, 13 P. F. S. 309. The law presumes, that in the distribution of his estate among his children a father will not unjustly discriminate between them; upon this is grounded the doctrine of advancements. But an advancement is in the nature of a gift, not a sale; no such presumption arises when the transaction assumes the form of a conveyance for full value; no injustice or inequality can result from a sale under such circumstances.

The conveyances made by John Miller to his sons, Jacob and David, in the year 1860, were in form, at least, deeds of bargain and sale; they are not founded on a consideration merely nominal, or one of love and natural affection; the consideration expressed in the deeds is admittedly the full value of the lands, and the payment thereof is not only recited in the body of the deeds, but is formally acknowledged in the appended receipts. We must therefore, in each case, in the first instance at least, assume the transaction to be what upon the face of the papers it appears to be, viz.: a sale of the land by father to son, for a valuable consideration paid, and the burden of proving that the conveyances were an advancement only, falls upon those who allege it. The fundamental error of the court, in reference to these conveyances of 1860, arises out of the failure to give proper effect, in the first instance, to the face of the papers. The opinion proceeds wholly upon the assumption of a gift, and the relations of the parties, the proportion of the gift to the donor's estate, the exactness of the consideration, and other matters of a like

nature, were introduced to qualify the assumed gift as an advancement. But as the papers imported a sale, and a payment of the consideration, the proof of these various matters was ineffectual for the purpose intended; if the transaction was indeed a sale, exactness in stating the consideration would be expected, and the relation of the parties, and the proportion which the premises conveyed bore to the grantor's whole estate, were matters altogether unimportant. The case was ruled, as respects the deeds of 1860, upon the presumption which was supposed to arise from the relation of father and son. Parol evidence might have been received to prepare the way for this presumption, but no witness was called who testified to any material fact bearing upon this branch of the case. There was no evidence whatever of acts done or declarations made at the time of the transaction, nor was there proof of any subsequent act or thing, which could be regarded as material to this inquiry. The case, as to the deeds of 1860, rested upon the conveyances alone.

The mere ex parte declarations of John Miller, made in the absence of his sons, and not communicated nor agreed to by them, were incompetent to affect their interests. The deed to Mrs. Funk, executed in the same form and similarly receipted, at a later date, was delivered without question after the death of John Miller, but it had been recorded, which was prima facie evidence of a previous delivery; besides, we have no evidence whatever as to the nature of the dealings between Mrs. Funk and her father, and because it may be convenient now for her to admit that her conveyance was an advancement we cannot, without proof, assume that it was so.

The principle ruled in Storey's Appeal and Boyd's Appeal, 2 Norris 97, cited by the appellees, is in conformity with what is herein stated. A careful reading of these cases will show very plainly that the deeds there expressed a valuable consideration, but they were not made by the donor directly to the donee; the advancement, in both cases, was of purchase money paid by a grandfather for lands conveyed by another to his grandchild. It is of no avail to argue that the old man was close in his dealings, that it does not appear that he had at any one time so much money on hand, that no checks or notes were produced showing the method of payment; we cannot determine the questions of fact involved upon mere conjecture. If the purchase money was an advancement, it is certainly remarkable that in a period of twenty years' possession, under an absolute deed of bargain and sale, no act has been done or word spoken to indicate the fact. We are of opinion that the court was certainly wrong, under the evidence, in charging the accountants with the lands conveyed in 1860.

[Appeal of Miller.]

The conveyances dated 17th May, 1873, were in the same general form as those of 1860, and upon their face imported an actual sale of the premises therein described for a full value. But the exceptants say that these deeds of 1873 were never delivered, and that under the statute of frauds the transaction was void; if this be so, then certainly there was neither sale, gift, nor advancement, and the exceptants' case as to the lands embraced in the deeds of 1873 must utterly fail, for how could the accountants be charged with what they never received? The burden of establishing an advancement is, of course, upon the exceptants. This they seek to do by exhibiting the deeds; for this purpose they offered them in evidence. If they were never delivered they are as worthless as the paper upon which they are written, and prove nothing. The validity of each deed, as an operative conveyance of the lands, is an essential part of the exceptants' case; to deny their delivery is to pull down the pillars which they have set up in support of it. The accountants are satisfied with the sufficiency of the delivery, and the exceptants in this proceeding cannot afford to deny it. We may, therefore, without injustice to the exceptants, waive the consideration of that question. The fact that the deeds were retained by the father during his lifetime is proper, perhaps, for consideration in discovering the true nature of the transaction under which they were executed, but their delivery must be assumed in order to reach the exceptants' case.

Notwithstanding the form of the conveyances of 1873, and the undoubted effect of the receipt for the purchase money, the learned court here again draws from the mere relation of father and son a presumption of an advancement.

The court says, " Claiming by title from their father with no written evidence of title, nothing but possession since 1873, the presumption is not of purchase and sale, but of an advancement. They claim to hold and own their portion of what was their father's estate. Mrs. Funk says, ' You rightfully claim it, but it was a gift; bring it into hotch potch;' they say, ' No, we bought and paid for it, and the estate has the equivalent in money;' this allegation of purchase they must make good."

If the accountants have "no written evidence of title, nothing but possession since 1873," they have no title at all, and they cannot of course be charged with the lands as an advancement. If they "rightfully claim the land," it must be under their deeds. They have no other source or evidence of title, and if the deeds do not prove "the allegation of purchase," they prove nothing. The burden is upon the exceptants to show the transaction to be other than it appears.

Some testimony was introduced by them for this purpose, much of it was incompetent, consisting of the declarations of John Miller, made in the absence of his sons, and not communicated to them. Such is the testimony of Jacob Wetzel, Sr., George Lehman, Lydia Lehman, Daniel Lecron, Samuel Strite, Levi Fox, John Harbaugh, Jr., and John Smith; portions of the testimony of the other witnesses are largely of the same character. No witness was called by them who was present at the time of the transaction of 1873, the proof is mainly of acts and declarations of the parties, subsequently occurring. The accountants, by way of reply, called witnesses who testify to acts and declarations of a different and contradictory character. It is scarcely necessary, we think, to refer to this testimony in detail; it has already been elaborately discussed by the Auditor, the Court and the counsel in turn; any extended reference to or discussion of it now, to meet the various views suggested, would occupy too much space. The testimony on part of the exceptants, excluding that which is incompetent is fragmentary in form and inconclusive in effect; some of the matters relied upon are trivial in substance, readily reconcilable with the theory of a sale, whilst the more material parts of it are seriously contradicted. The only person present at the transaction of 1873, surviving and competent to testify, was Mrs. Catharine Brown, a witness produced by the accountants, who testifies, that the sons bought the land and gave their notes for the purchase money in her presence; that the deeds were afterwards tendered, but were retained by the father, during his life, at the sons' request; this witness was in no way discredited or contradicted. After the father's death, his sons' notes, bearing date 12th April, 1873, in considerable amounts, were found in his possession; these notes are in no way connected with the transaction, excepting in date. They are not for aliquot parts of the purchase money, but as the transaction involved a settlement, the amounts of the notes were liable to be affected by the results of the settlement. The retention of the deeds by the father during his life, and the execution of notes to protect the mother during widowhood, are as readily reconcilable with a sale, as an advancement.

After a patient and careful investigation of the whole case, we regard the weight of the evidence as being in support of the presumption arising from the face of the papers.

> The decree of the Orphans' Court is reversed, and the report of the Auditor is confirmed, the costs of the appeal to be paid by the appellee.