Kocher Estate.

Argued March 26, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*M. L. McBride,* for appellant.

*T. A. Sampson,* with him *Stranahan & Sampson* and *Lawrence P. Monahan,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, April 16, 1946:

Appellant, Frederick Kocher, is seeking here to have his brother Charles' share in their mother's estate reduced because of a provision in her will declaring that she had made an advancement to Charles—a provision claimed by the latter to be invalid because in violation of a previous contract between him and his mother.

The contract in question was entered into on September 28, 1938. It provided that in consideration of the transfer by Mrs. Kocher to her son Charles of 213 shares of Pittsburgh Cut Flower Company stock, Charles agreed that he would pay her $100 upon the signing of the agreement and $25 per month during the period of her life, and that he would deposit the certificates of the stock with one Hilty, an attorney-at-law, as security for this obligation. The paragraphs in the agreement numbered "Fourth" and "Fifth" are the provisions upon which

the present controversy depends. They are as follows: "Fourth: That it is not the intention of the party of the first part [Mrs. Kocher] to have the said stock covered by the terms of this agreement to be in any manner considered an advance on any share of the party of the second part [Charles Kocher] in the estate of the party of the first part." "Fifth: That the payment of said Twenty-five ($25.00) Dollars per month during the life of the party of the first part shall be considered as full and adequate consideration for the said transfer of the said stock."

Charles received the stock, paid the $100, and also paid the $25 each month until the death of his mother on March 25, 1944, in all $1750. Mrs. Kocher left a will dated June 9, 1941, in which, after making one or two minor bequests, she left her entire residuary estate to her five children, Frederick, Louis, Charles, Eugene and Ida R. Staley, "share and share alike, except that the difference between the amount paid to me during my lifetime by Charles Franklin Kocher pursuant to the terms of a written agreement dated September 28, 1938, and the sum of $7,500.00 shall be considered an advance by me to my son, Charles Franklin Kocher, and which amount shall be deducted from his share of my estate."

The court below held that the residuary estate should be divided equally among the five children without any reduction of Charles' share. Frederick Kocher appeals on the ground that, under the provision of the will above quoted, the difference between $7500, the amount apparently fixed by the testatrix as the value of the Pittsburgh Cut Flower Company stock, and the sum of $1750, which Charles in fact paid for it, should be deducted from Charles' share as an advancement.

It is plain—indeed conceded—that, leaving aside for a moment the provision in the will, the transaction between Charles and his mother under the agreement of September 28, 1938 did not constitute an advancement. An advancement is a *gift* made to a child in anticipation

of the share to accrue to it from the parent's estate; a *sale* of property is not within the domain of advancements. "The law presumes, that in the distribution of his estate among his children a father will not unjustly discriminate between them; upon this is grounded the doctrine of advancements. But an advancement is in the nature of a gift, not a sale; no such presumption arises when the transaction assumes the form of a conveyance for full value; no injustice or inequality can result from a sale under such circumstances": *Appeal of Miller,* 107 Pa. 221, 227. It is true that in the present instance Charles did not, in terms, agree to pay to his mother an amount equal to the full value of the stock, but he did agree to pay her $25 per month during her lifetime, and thus each of the parties gambled on the duration of her life—if it proved to be long, the son would be paying more than the stock was worth, if short, he would correspondingly gain as far as this particular transaction was concerned. She happened to die in less than six years after the making of the contract but that did not affect the adequacy of the consideration from a legal standpoint; indeed, it was expressly stated in the contract that the monthly payments should be considered as *full and adequate consideration.*

Even if the transfer of the stock had been without any consideration whatever—a pure gift on the part of the mother—the transaction would still not have constituted an advancement, because the question whether a transfer or conveyance is to be regarded as an advancement must be determined wholly by the intention of the donor, and that intention is best ascertained by the declarations made by him when the child receives the property: *Miller's Appeal,* 40 Pa. 57, 59; *Merkel's Appeal,* 89 Pa. 340, 343; *O'Connor v. Flick,* 271 Pa. 249, 252, 114 A. 636, 637. Here, in the written contract itself, there is embodied an express statement by the mother that it was *not* her intention to have the stock considered an advance on Charles' share in her estate.

Appellant contends, and it is of course true, that while, if Mrs. Kocher had died intestate, the law would not have stamped the transaction as an advancement, she did in fact make a will, and a testator undoubtedly may prescribe that some previous transaction, whether originally so conceived or not, shall be considered, in the distribution of his estate, as though it had been an advancement, and he may, however arbitrarily, fix the amount of such advancement as he may see fit: *M'Kibbin's Estate*, 207 Pa. 1, 5, 56 A. 62, 63; *Dunshee v. Dunshee*, 243 Pa. 599, 601, 90 A. 362, 363; *O'Connor v. Flick*, 271 Pa. 249, 253, 114 A. 636, 637; *Shelly Estate*, 154 Pa. Superior Ct. 433, 436, 36 A. 2d 197, 198. Nor is it hardly necessary to add that a testator is ordinarily entitled, so far as his children are concerned, to distribute his property as he pleases and to make any discrimination among them he may desire. But, while this is axiomatic and fundamental, it does not meet the present situation, because here the mother's freedom in the exercise of her testamentary power had become limited by the contractual obligation which she had assumed in the contract with her son. An agreement, supported by consideration, to make a will or not to make a will, or to devise property in a stipulated manner, is binding and irrevocable: *Taylor v. Mitchell*, 87 Pa. 518; *McGinley's Estate*, 257 Pa. 478, 483, 101 A. 807, 808; *Cridge's Estate*, 289 Pa. 331, 337, 137 A. 455, 458; *Craig's Estate*, 298 Pa. 235, 241, 148 A. 83, 85; *Culhane's Estate*, 133 Pa. Superior Ct. 339, 347, 348, 2 A. 2d 567, 571, 572. When it was expressly stipulated in the contract that Mrs. Kocher had no intention of having the stock *in any manner* considered an "advance", this was clearly tantamount to a covenant on her part that it was not to be so treated either in case of her intestacy or if she should dispose of her estate by will. To give this declaration any other interpretation would be to stamp it as nothing less than a trap to deceive her son, who was justified in relying upon it as a binding promise. If a clause in a contract

is ambiguous or of doubtful intent it must be construed as meaning what the one party knew, or had reason to know, was in accordance with the other party's understanding of the language employed. It may also be pointed out that the word "intention" is used in other parts of the agreement between the mother and the son, as, for example, in the third numbered paragraph where it is stated that "the intention of the parties hereto is to deposit said stock with said George L. Hilty" etc., which obviously is meant to be a covenant on the part of Charles that he will so deposit the stock.

That Mrs. Kocher could, in her will, have cut her son Charles off altogether, cannot be denied. But what she agreed, for valuable consideration received, was that she would not discriminate against him for the *sole reason* of the stock transaction—in other words, that she would not take that transaction into account in disposing of her estate. By the express terms of her will she violated that obligation. After distributing her property on the basis of equality among all her children (they were to take "share and share alike"), she did the very thing which she had agreed not to do, namely, she took from the share he was otherwise to receive the value of the stock over and above what he had paid for it up until the time of her death; that excess, she stated, "shall be considered an advance by me to my son . . . and which amount shall be deducted from his share of my estate." This was a repudiation by her of her obligation under the contract, and for a court to sustain it would be to convert the carefully prepared and elaborate agreement of 1938 into a mere "scrap of paper".

Decree affirmed; costs to be paid out of the estate.