## Yingling Estate (No. 1)

*O. J. Tallman* and *R. F. Stevens*, for accountant.

*Harold W. Helfrich*, for Alfred Newhard, individually.

*Donald L. LaBarre*, for exceptant.

*Phillip H. Williams*, guardian for Alfred Newhard, Jr.

GEARHART, P. J., May 16, 1957.—John J. Yingling died January 24, 1953. His will, dated March 29, 1951, was duly probated before the Register of Wills of Lehigh County on February 5, 1953.

Alfred H. Newhard and the Lehigh Valley Trust Company, executors, have filed their first and final account. Testator was survived by a son, Henry W. Yingling, who, with his wife, have filed exceptions to the proposed schedule of distribution because the accountants have not paid the $15,000 encumbrance remaining on the real estate at the death of testator. Item IV of testator's will provides:

"I give and devise unto my son, Henry W. Yingling, and my daughter-in-law, Edna C. Yingling, husband and wife, as tenants by the entireties, all that certain lot or piece of land with the buildings thereon erected situate on the South side of Walnut Street, between West Street and Seventeenth Street, known as No. 1644 Walnut Street, Allentown, Pennsylvania, being the home in which I have resided. Any encumbrances which may be a lien on said property at the time of my decease shall be paid in full by my hereinafter named Executors. The real estate hereby devised shall not be subject to any charge, however, by operation of law or otherwise for or on account of the monetary bequests herein contained under any circumstances whatsoever."

On December 12, 1952, John J. Yingling conveyed premises 1644 Walnut Street, Allentown, to John J. Yingling and Edna C. Yinging as joint tenants and not as tenants in common with the right of survivorship. The deed was duly recorded in the office for the Recorder of Deeds of Lehigh County. It is this conveyance by decedent to himself and his daughter-in-law which gives rise to the disputed legal question. The legal question involved is whether this conveyance represented an ademption or a satisfaction of the legacy

given in item IV, and further, if it is a satisfaction, whether it amounts to a pro tanto satisfaction or a satisfaction in full.

It should be stated that at the time testator wrote his will, there was a $15,000 mortgage on the premises, which at the time of his death remained unpaid. After the death of testator, the $15,000 mortgage was paid by one of exceptants, Henry W. Yingling. The position of exceptants is that the conveyance by testator represented an ademption of a legacy so far as the real estate was concerned, but as to that part of the gift relating to the mortgage, there was no ademption, in short, that the conveyance did not represent a satisfaction in full of the legacy.

The accountants contend that the gift of the house and the direction to pay off the encumbrance are conjoined into one gift and that the same is a specific gift. The accountants, one of whom, Alfred H. Newhard, has a direct pecuniary interest in the outcome of the dispute, contends that there is an ademption of the gift in toto by means of the conveyance of the real estate in the lifetime of testator.

This brings us to the matter of immediate concern. Exceptants, at the hearing, proposed calling witnesses for the purpose of establishing by extrinsic evidence what occurred at the time decedent executed the deed conveying the premises to himself and his daughter-in-law as joint tenants. The purpose, presumably, was to show that testator did not intend a complete satisfaction of the legacy contained in the will. At this point, the accountants objected to the reception of any extrinsic evidence on the ground that the gift in question was specific, and since testator had disposed of the same in his lifetime, his intention in doing so was immaterial.

It was then agreed by counsel for both parties and the court that before going on with the hearing, it would probably be best to dispose of the evidential ques-

tion, i.e., should extrinsic evidence be admitted to show the intention of decedent?

It was stipulated that the only question to be decided preliminarily was whether or not extrinsic evidence should be received. Argument was had on the question.

In the Fiduciary Review of November, 1955, the question of the admissibility of extrinsic evidence in cases of ademption, advancement and satisfaction of legacies, is discussed. In that article a number of cases are cited and the editor goes on to say: "This issue" (extrinsic evidence) "was raised and decided early in Pennsylvania," citing Baily v. Herkes, 1 P. & W. 126, and Zeiter v. Zeiter, 4 Watts 212, which cases held that extrinsic evidence of satisfaction was admissible under the theory that rather than rebutting the gift, such evidence admitted the gift but merely showed that it already had been paid.

In Laning's Estate, 241 Pa. 98, check stubs of testator were admitted as bearing on testator's intent with respect to satisfaction of the legacy. And it was held in Miner v. Atherton's Exec., 35 Pa. 528, 536, and Glessner's Estate, 40 D. & C. 271, 274, that extrinsic evidence is admissible either to rebut or to confirm the presumption of satisfaction. In Raudibaugh's Estate, 52 Dauph., 346, 348, 349, extrinsic evidence was admitted to show testator's intent in satisfying a mortgage.

In Houston Estate, 383 Pa. 466, declarations of decedent were received to determine what her intentions were at the time she transferred her interest in a partnership. The question at issue was whether she intended, by the assignment of the partnership interest, to make an advancement to the legatee. It has been held in a number of cases that in determining whether a conveyance or transfer made by decedent in his lifetime is to be regarded as an advancement, must be determined wholly by the intentions of the donor,

and that intention is best ascertained by the declarations made by decedent when the prospective legatee received the property: Miller's Appeal, 40 Pa. 57, 59; Merkel's Appeal, 89 Pa. 340; O'Connor v. Flick, 271 Pa. 249; Kocher Estate, 354 Pa. 81; Horn's Estate, 317 Pa. 49, 50, 54; Parnham v. Steele, 5 D. & C. 2d 145.

As previously stated, the accountants insist that the gift was specific and adeemed, that under the authority of Blackstone v. Blackstone, 3 Watts 335, 338, and Hoke v. Herman, 21 Pa. 301, 303, the intention of decedent in extinguishing the gift becomes immaterial and extraneous evidence of decedent's intention is inadmissible. Exceptants acknowledge that the extinction of the legacy by conveyance in the lifetime of testator adeemed the gift of the real estate. However, they argue, that testator in the instant case did more than make a specific devise of the real estate in that he directed the payment of any encumbrance which should be a lien on the property at the time of his death. As to this gift of the mortgage encumbrance, exceptants maintain that there has been no ademption; this for the reason that the direction to pay the encumbrance did not represent a specific legacy, but rather a general legacy, and, therefore, was not adeemed. See McFerren Estate, 365 Pa. 490, 492, 493, and cases cited; Page on Wills, vol. 4, sec. 1393.

At this time we are not deciding whether the gift of the payment of the encumbrance was a specific or a general legacy. We are limited by agreement to determine whether extraneous evidence is admissible to aid in discovering the intent of testator in making the conveyance of the real estate to himself and his daughter-in-law. Did he intend by the conveyance to completely satisfy the gift contained in the will in favor of his son and daughter-in-law?

From the circumstances thus far revealed, the writer is at a loss to know what testator's intentions were in making the conveyance.

Accordingly, now, May 16, 1957, for the reasons assigned and the cases cited, we rule that extraneous evidence is receivable to show the circumstances surrounding testator when he made the conveyance of the real estate; this for the purpose of determining his intent in making said conveyance. At the hearing the accountants may make objections on the record as particular evidence is offered by the other side. The case is set down for further hearing on June 13, 1957, at 10 a.m.