LAURA LE. COUTEULX DE CAUMONT,, EXECUTRIX, ETC.; OF MONTAIGN MORGAN, DECEASED, AND OTHERS, APPELLANTS, *v.* STEPHEN G. BOGERT, EXECUTOR, ETC., OF RICHARD J. MORGAN, DECEASED, AND OTHERS, RESPONDENTS.

*Gift of stock in a corporation — what is a sufficient delivery — when a gift to a child is not to be treated as an advancement.*

Prior to April 16, 1878, one Charles Morgan had transferred certain property to a railroad and steamship company, for which he was entitled to receive its bonds to the amount of $5,000,000 and 50,000 shares of its stock of the par value of $100 each, but no certificate for such stock had ever been issued and delivered to him. Prior to that time he had announced his intention of distributing

nearly all his fortune during his lifetime, and had sent for his counsel, told him that he wished to distribute a majority of the stock of the said company among persons named, and directed him to prepare the necessary instruments. On April fourteenth the testator executed instruments transferring 30,000 shares of the said stock to different persons—his widow, some of his children and two sons-in-law—and on April fifteenth the said instruments were duly acknowledged and delivered by him to one of his sons-in-law, with directions to see that the business was all properly perfected, and after so doing he expressed his gratification that the business had been completed. One of the instruments was delivered to the beneficiary named in it, before the testator executed his will; the others were placed by the testator's wife in a safe in his room.

*Held*, that by the execution and delivery of the instruments the testator transferred his interest in the said shares of stock to, and vested the same in, the beneficiaries therein named.

April 16, 1878, the testator made a will by which he gave, devised and bequeathed all his property, real and personal, " as provided by the laws of the State of New York in cases of intestacy."

*Held*, that the shares so transferred did not form part of the testator's estate at the time of the execution of the will, and did not pass thereunder.

That the shares so transferred by the testator were not advancements for which the beneficiaries could be compelled to account upon the distribution of the residue of his estate.

APPEAL from a decree of the surrogate of the county of New York, made upon the final accounting of Mary J. Morgan, as executrix of the will of Charles Morgan, deceased.

*John E. Parsons, Charles A. Davison, S. B. Brownell* and *Charles W. Dayton*, for the appellants.

*F. N. Bangs* and *John Sidney Davenport*, for the respondents.

DANIELS, J.:

The appeal has been taken on behalf of grandchildren and great grandchildren of the testator, Charles Morgan, who died on the 8th day of May, 1878. It was urged before the surrogate, and has been in like manner upon the hearing of the appeal, that the executrix should have been charged in her account with 30,000 shares of the stock of Morgan's Louisiana and Texas Railroad and Steamship Company. The surrogate rejected this claim, and whether he was right in doing so depends in a large degree, if not wholly, upon the legality of the formal transfers of these shares to his widow, two of his children and one of his grandchildren. The will was executed on the 16th of April, 1878, and what was done to vest these shares

in the persons found to be their owners by the surrogate, preceded that time. The testator had previously transferred the property, acquired by him, to the railroad and steamship company, for which he was entitled to receive $5,000,000 in its bonds and 50,000 shares of its stock of $100 each, amounting nominally to $5,000,000 more. Sixty shares were distributed to other persons to qualify them to act as officers of the company, and certificates for the residue were to be issued and delivered to the testator, but no such certificates were issued up to the time of the execution of his will. But the fact that he had paid the company for the stock, and had become entitled to the certificates, made him a stockholder in the corporation to the extent of the stock he was entitled to receive. (*Rutter* v. *Kilpatrick*, 63 N. Y., 606.) He was accordingly in a position and had such a title as would enable him to transfer to others his right to receive the certificates of the stock. This right, as well as the certificates themselves, was merely a chose in action. It was the right to receive a corresponding proportion of the net earnings of the company (*Burrall* v. *Bushwick R. R. Co.*, 75 N. Y., 211), and as such was capable of being transferred as other choses in action may be, by assignment. (*Robinson* v. *National Bank, etc.*, 95 N. Y., 637, 642.) It was therefore a matter of fact to be determined by the evidence, whether these disputed shares had been transferred by the testator previous to the execution of his will. If they had not they still continued to be a portion of his estate, for the value of which the executrix should have been charged in the settlement of her accounts. But if they had been legally transferred by the testator before the execution of his will, then the decree exonerating her from liability on account of these shares was probably correct.

The shares were, in each instance, in form, transferred by a written instrument executed by the testator. These instruments were subscribed by him and by attesting witnesses, on the 14th of April, 1878, and they were acknowledged by him on the following day. By means of them the testator did design to transfer the shares of stock in the company mentioned in the instruments. By one of these instruments 7,500 shares were in form assigned and transferred to Charles A. Whitney, who was the husband of a daughter of the testator, for the benefit of the testator's widow. And Whitney,

in like manner and form, executed a similar instrument to her and delivered it with the one received by him for her benefit to her before the execution of this will. The other instruments were executed directly to the persons who were designed to be made the donees of similar amounts of stock. Each ran directly to the person designed to be made the owner of the stock, and, with the exception of the name of the donee, the instruments executed by the testator were each in the following form :

Know all men by these presents, that I, Charles Morgan, of the city of New York, for value received, have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign and transfer unto Charles A. Whitney, of the city of New Orleans, 7,500 shares, being for $750,000 of the capital stock of the Morgan's Louisiana and Texas Railroad and Steamship Company, standing in my name on the books of the said company, and do hereby constitute and appoint the said Charles A. Whitney my true and lawful attorney, irrevocable for me and in my name and stead, but to his use, to sell, assign and transfer and set over all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that my said attorney or his substitute or substitutes shall lawfully do by virtue hereof.

In witness whereof, I have hereunto set my hand and seal the 10th day of April, 1878.

CHAS. MORGAN.    [L. S.]

Sealed and delivered in the presence of

HENRY J. LEOVY,<br>MARGARET DOBSON,<br>GEORGE W. QUINTARD.

STATE OF NEW YORK,  &#125;<br>
CITY AND COUNTY OF NEW YORK, &#125; *ss. :*

Be it remembered, that on the 15th day of April, A. D. 1878, before me, the undersigned, S. B. Goodale, a commissionor resident in the city of New York, duly commissioned and qualified by the executive authority, and under the laws of the State of Louisianna, to take acknowledgment of deeds, etc., to be used or recorded

therein, personally appeared Charles Morgan, to me known to be the individual named in and who executed the within irrevocable stock power, and acknowledged to me that he did sign, seal and deliver the same as his free act and deed on the day and year therein mentioned, and for the consideration, uses and purposes therein expressed.

In witness whereof, I have hereunto set my hand and affixed my official seal the day and year aforesaid.

[L. S.]        S. B. GOODALE,

*Commissioner for Louisianna.*

Before either of these instruments was drawn or executed, the testator had formed the design of donating these 30,000 shares of stock as he endeavored to do by means of them. And it was in part for that purpose that the attendance and presence of his counsel residing in the city of New Orleans was secured by him during the latter part of March and the early part of April, 1878. And in a conversation which they had upon this subject, the testator informed him " that he desired to leave to some of his heirs a portion of his estate, but he desired to leave it conditional. He wanted to leave to them bonds and stocks, but with a condition that would tie them up for a long period of time." This he was in substance advised by other counsel could not be done, and the condition was not insisted upon. The purpose of the testator was to distribute his property before his decease and to avoid the execution of a will. That was expressed in an interview which he had with Mr. Leovy, his counsel from New Orleans, in which he stated: " I intend to distribute nearly all of my fortune during my lifetime. I don't want any will, any fighting over my will, or any litigation about it as is now going on in the Vanderbilt case. I propose to distribute nearly all, and that I propose to do to as few as possible. I wish now to commence at once. I wish to distribute a majority of the stock of the Morgan Railroad Company. It is a long name and I use that to designate the company. I wish to donate a majority to certain persons. I want to give three million dollars of this stock to the following persons: Mrs. Morgan, Mrs. Whitney, Mrs. Quintard and Richard J. Morgan. He then said that if Richard J. Morgan's health was good that he would give him the bulk of his fortune, or if his father had lived he would have given it to him.

My object, he said, is to keep my fortune together. I have worked hard for it and I desire that it should continue to exist. The substance was that he was extremely anxious, and I think he used the words ' extremely anxious,' to place the bulk of his fortune in the hands of the persons he mentioned. It was a conversation of nearly two hours." This conversation took place on or near the third of April, and counsel was directed to prepare such instruments as would secure the transfer of these shares, as that was designed to be made by the testator. The four formal transfers were afterwards drawn, but not by this counsel. He, however, did draw two others in the same form, by which 1,000 shares were given to Mr. Quintard and a like number to Mr. Whitney, who were respectively the husbands of the surviving daughters of the testator. When the formal transfers were ready for execution they were presented to the testator, but he then declined to execute them, desiring more time for their further consideration. But on Sunday, the fourteenth day of April, he sent, by his son-in-law, Mr. Whitney, for Mr. Leovy, for the purpose of having the instruments executed. He and Mr. Whitney were afterwards present at the testator's residence, where he was sick and confined to his bed, and these instruments were presented to him for execution. He sat up in his bed, and upon a writing desk placed before him, subscribed the instruments. They were then placed in the possession of his son-in-law Mr. Whitney. The next day, which was Monday, the fifteenth day of April, the instruments were produced and their execution formally acknowledged by the testator, and he then said: "Mr. Whitney, I rely upon you to see that this business is all properly perfected, and I want to have the fact of these transfers having been signed and made out communicated to Mr. Hutchinson without delay." Mr. Whitney was the president of the railroad company and Mr. Hutchinson was his partner, supposed to have the charge of the transfer of stock, and information of the transfers was obviously designed to be given in that manner to the company to render them more complete and effectual than they would be without it, and that under the law would render the transfers, provided they were legal and valid in other respects, operative against the company. (*Robinson* v. *National Bank, etc.*, 95 N. Y., 637.) After these instruments were executed in this manner, the testator

expressed his gratification that the business had been completed,. and before the execution of his will, and after his daughter Mrs. Whitney had arrived from New Orleans, he said to her, as near as the witness could recall his words: "Daughter, I have given you seven thousand five hundred shares of the Morgan's Louisiana and Texas Railroad and Steamship Company's stock. I have given. your husband one thousand shares. I have given Mrs. Morgan seven thousand five hundred shares; to your sister Mrs. Quintard the same; to your nephew Richard J. Morgan the same. I have given this stock to you for the purpose of perpetuating the busi- ness in the manner I have labored to do it. I have confidence that you. will maintain the stock and strive to have the business carried on in the manner it has been carried on. I will exact from you a promise, as I have from them, that you will retain the stock for that purpose." On Monday, the fifteenth, George W. Quintard, the husband of one of the testator's daughters, likewise had a conversation with him, and in this conversation he "said that he had given Mrs. Morgan, Mrs. Whitney, Mr. Dick Morgan and Mrs. Quintard seven hundred and. fifty thousand dollars each for the purpose which I have stated before." This evidence, as well as that which preceded the sub scribing of the instruments themselves, very plainly disclosed the fact that the testator intended, by means of these instruments, to transfer the shares mentioned respectively in them to the donees, and intended to accomplish that by the execution of the instru- ments and their delivery to Mr. Whitney. And what he likewise said concerning the completion of the business indicated his under- standing to be that all that it was necessary for him to do had been done to transfer these shares. As to those in form transferred to Mr. Whitney for the wife of the testator, the transfer seems to have been made in all respects formally complete, for he handed to her on the evening of the fourteenth of April the transfer made for her benefit by the testator to himself, and another executed by him to vest the title to the shares in her. As to this portion of the stock, therefore, no question can arise but that the transfer was then complete and effectual, and vested in her the absolute right to the shares. (*Fulton* v. *Fulton*, 48 Barb., 581, 590, 591.) And when the other instruments designed for the other three donees were placed in the possession and under the control of Mr. Whitney,

for their benefit, and with the authority delegated to him to see that the business was all properly perfected, that equally and as effectually transferred the title to the shares to them, certainly so as to Mrs. Whitney and Mrs. Quintard, who were respectively informed of the facts before the will was executed; and equally so as to Richard Morgan, for the delivery of the shares to Whitney under this delegated authority was equivalent in law to a delivery to Morgan himself. (*Fisher* v. *Hall*, 41 N. Y., 416, 422 423.) And these facts, in a controlling manner, distinguish this case from all those cited and relied upon in behalf of the parties appealing. But after these instruments were executed they were placed in a safe in the room occupied by the testator, and because of that fact it has been insisted that they remained in his possession and were not designed to become, and did not become, operative before the execution of the will. But they seem to have been placed in the safe by Mrs. Morgan herself, simply for their preservation and safety; and making that deposit of them in that manner did not restore them to the possession of the testator, or in any manner tend to annul or avoid the effect of what had previously been done by him. (*Armitage* v. *Mace*, 96 N. Y., 538.) And this deposit of the instruments, if it was within the knowledge of the testator, was in no manner regarded by him as a surrender of them to his control. Neither did he at any time express any dissent as to their effect, nor take or intimate that any measures should be taken for their restoration or destruction at or after the time when his will was executed. The witness Dobson did state that it had been said that other papers had been made rendering them ineffectual, but as there was no evidence that such had been the design of the testator himself, or that any authentic statement had been made entitled to this effect by any person, this evidence given by her could have no substantial weight in the case. They still, notwithstanding that deposit, remained complete and effectual transfers of the shares mentioned in them respectively, and the persons named as donees took the title to that extent by means of the execution and delivery of these several instruments, and the notice immediately forwarded by telegraph to the company, as well as the knowledge acquired by Mr. Whitney himself, rendered the transfers entirely complete, so far as the company could be con-

cerned in them; and they were so afterwards recognized and acted upon in the course of its business. These shares accordingly did not remain or continue to be a part of the estate of the testator at the time of the execution of his will, which took place about the hour of three o'clock in the afternoon of the 16th of April, 1878. The will was in due form subscribed, published and attested, and is in the following language:

"I, Charles Morgan, of the city of New York, make this my last will and testament.

"I appoint my wife Mrs. Mary J. Morgan to be my executrix.

"All my property, real and personal, is hereby given, devised and bequeathed as provided by the laws of the State of New York in cases of intestacy.

"Witness my hand and seal, this sixteenth day of April, one thousand eight hundred and seventy-eight.

"CHAS. MORGAN." [L. S.]

This will was executed on account of his inability to make a complete distribution of his estate as he had previously designed to do himself; and because of the direction contained in it for the disposition of his estate, as provided by the laws of the State of New York in cases of intestacy, it was urged before the surrogate, and has also been upon the appeal, that the two daughters and grandson of the testator should have been charged with the shares transferred to them as advancements under the provisions of the statute relating to that subject; and *Lawrence* v. *Lindsay* (68 N. Y., 108) and *Beebe* v. *Estabrook* (79 id., 246) have, with other authorities, been relied upon in support of this position. But the facts presented in these cases were so dissimilar to those upon which the determination of this appeal is dependent as to render them inapplicable as authorities in the case. It is no doubt true that if the transfers of the shares had been made after the execution of the will, they would have been deemed to be so much of the testator's estate delivered to the legatees upon their respective legacies. The law upon this subject is well settled to that effect. But as the title to these shares was completely transferred by the testator before the execution of his will, this principle is not applicable to the disposition of this part of the case. But it is to be determined upon the effect of the will, in view of the provisions of the

statute of the State made upon the subject of advancements. But those provisions are not deemed to be applicable to or controlling over the disposition of the appeal in this respect; for the persons intended to be benefited by the will took whatever shares they became entitled to under it in the estate of the testator by means of its provisions. It related to a disposition of only the property owned or held by the testator at the time when it was executed, or at the time of his own decease. And as the shares in controversy had been previously disposed of by him, they no longer formed any portion of his property or estate, and, accordingly, were not subject to or qualified by the directions contained in the will. That was designed by its language to affect only the property of the testator, and that was so much of his estate as remained exclusive of what he had in this or in any other manner effectually disposed of. And whatever rights or interests his next of kin might be entitled to in his estate they derived them from the will, and not from the provisions of the statute. It was the will itself which gave them such rights and interests. That was done by the intent and act of the testator, and the effect of the reference made to the laws of the State in cases of intestacy was merely to determine who the persons were who should take under the direction contained in the will and the extent of the interests so to be taken. For these reasons the provisions of the statute relating to the subject of advancements have no application to this controversy. For section 91 of the statute, providing for charging advancements, has limited the authority to do so to "any child of such deceased person," as was previously referred to by the next preceding section, and that section included only a deceased person who should die intestate, or leaving a will not bequeathing the surplus of his personal estate. (3 R. S. [6th ed.], 104, 105, §§ 90, 91.) The testator did not die leaving a will of this description, for by means of it he disposed of the entire surplus of his estate, and referred only to the statute to ascertain the persons who should receive it and the amounts to be bestowed upon them in the settlement of his estate. And as this is the full extent of the provisions of the statute relating to the personal estate of a deceased person, those which provide for the charging of advancements are inapplicable to this case. A somewhat similar point was considered in *Camp* v. *Camp* (18 Hun, 217), where it was held that

advances made by the testator to some of his children could not be brought into the settlement of the estate for the purpose of diminishing their interests in it. And *Black* v. *Whitall* (1 Stockton [N. J. Eq.], 572); *Brown* v. *Brown* (2 Iredell [N. C. Eq.], 309); *Kreider* v. *Boyer* (10 Watts, 54) and *Brewton* v. *Brewton* (30 Ga., 416) sustain the same view.

Furthermore, it cannot be held as a matter of fact that the testator designed the transfer of these shares to be advancements, within the legal acceptation of that term, to his two daughters and grandson. For he did not contemplate an equal distribution of his estate among his descendants, or that these persons should be excluded from the residue and as a matter of fact intended wholly to disinherit one of the other next of kin because of his own misconduct, and to place the bulk of his property in the hands of as few persons as possible. And it was in subordination to that intention that he made these transfers of the 30,000 shares of the stock, as well as of 2,000 other shares, given one-half to Mr. Whitney and the other half to Mr. Quintard.

Neither of the authorities relied upon in support of the appeal justify any other disposition of this case than that which has already been intimated. For there was an effective delivery of the transfers before the will was made, and they cannot be charged as advancements, for the reason that such does not seem to have been the intention of the testator, and by his will he disposed of only that part of the estate of which he then remained the owner, which necessarily excluded the shares of stock previously disposed of by him. Upon neither of the points urged in support of the appeal has any ground been found for dissenting from the disposition of the case made of it by the surrogate. And his decree should, therefore, be affirmed, with costs, leaving the right of the appellants to costs to be determined on the settlement of the order.

BRADY, P. J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Decree affirmed, with costs.